[No. 13434. Department Two. — March 1, 1890.]

## ANNA L. CARTER, RESPONDENT, *v.* GEORGE McQUADE, APPELLANT.

HUSBAND AND WIFE — AGREEMENT OF SEPARATION — DIVISION OF COMMUNITY PROPERTY — STATUTE OF FRAUDS.— DELIVERY AND CHANGE OF POSSESSION. — In this state, either husband or wife may enter into any engagement with the other respecting property which they might if unmarried. A husband may transfer his separate property or community property to the wife, and they may agree to divide their community property upon a separation; and when they have been residing together upon a tract of land belonging to the husband, of which he leaves her in possession at the time of separation, and transfers to her in good faith certain personal property situated upon said land, in consideration of her releasing all claims against his real and personal property, and the wife thereafter records an inventory of her separate personal property, including the property so transferred to her by her husband, a creditor of the husband who has both actual and constructive notice of the title and possession of the wife, before bringing suit against the husband, cannot levy execution against the property so transferred and inventoried, upon the ground that there was no sufficient delivery and change of possession.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The facts are stated in the opinion.

*I. M. Kalloch,* for Appellant.

*F. D. & G. W. Nicol,* for Respondent.

BELCHER, C. C.—This is an action to recover the possession or value of certain personal property. The plaintiff had judgment, and from that judgment, and an order denying a new trial, the defendant appeals.

The material facts of the case, as shown by the record, are as follows: In December, 1887, the plaintiff, Anna L. Carter, and Jacob E. Carter were husband and wife, and were residing on a tract of land in Tuolumne County. On the twenty-second day of that month they entered into a written agreement, by which he agreed to give her " a bill of sale and peaceful possession " of certain described personal property, and in consideration thereof she agreed to relinquish all claims against any property, real or personal, belonging to him, or which he might thereafter acquire, and also to relinquish all claims against him for the future support of herself and their children. It was then stipulated in the agreement "that the children now belonging to the family shall, at their own pleasure, visit either party to this instrument, and be welcome, and that either party to this instrument shall have the privilege to visit the children at any time or place they may be located, and no insinuations be offered by either party to the other to mar the pleasure of such visit." In pursuance of this agreement, Carter executed and delivered to his wife a bill of sale of the property agreed upon, reciting therein that it was made for and in consideration of $512.10, "to me paid in hand by Mrs. Anna L. Carter," and further reciting, after the

*habendum* clause: "And I do, for myself and legal representatives, agree with said party of the second part and her legal representative to warrant and defend the sale of the aforementioned property unto the said party of the second part and her legal representatives against all and every person whatever."

Before making the agreement and bill of sale, the parties had all of their personal property appraised and divided into supposed equal parts, and it was one of these parts that he transferred to her. Shortly after the papers were signed, Carter went away to Merced County, where he afterward made his home. He also took away his part of the property. Mrs. Carter remained at her old home in Tuolumne County, and kept there her five children and her part of the property. Carter occasionally went back to his old home. Several times he stopped overnight, and one night he slept with his wife. On March 6th he made to her a new bill of sale for thirty head of hogs, more or less.

In April following the above transactions, plaintiff made out, signed, and acknowledged in proper form a full and complete inventory of her separate personal property, including that transferred to her as above, and caused the same to be recorded in the office of the recorder of the county in which she resided.

In May, 1888, one Horsley commenced an action against Carter in a justice's court in Merced County, and having obtained judgment, he filed an abstract thereof in the office of the county clerk, and had the the same docketed in the judgment docket of the superior court. He then took out an execution and placed the same in the hands of the defendant, who was the sheriff of Tuolumne County, with directions that he levy it on the property described in the complaint. The defendant levied the execution as directed, and advertised the property for sale. At the time of the levy plaintiff notified defendant that the property was hers, and before

the sale she served on him a written notice that the property was her separate property, and a demand that he release and surrender the same to her. Defendant refused to comply with this demand, and thereupon this action was commenced.

By his answer the defendant denied that the plaintiff was the owner or entitled to the possession of the property described in the complaint, or any part thereof, and he alleged that it was all the community property of Carter·and his wife.

1. There is no pretense that the transfer to plaintiff was made with any intent to hinder, delay, or defraud any creditor or creditors of the transferrer, nor could such a pretense be sustained. Carter was a witness for defendant, and, after stating that he was the husband of plaintiff, said: "On December 22d I entered with her into an agreement of separation and division of property. The property described in the agreement has never been removed from the ranch, to my knowledge. . . . . My intention in leaving these things was to enable my wife to support herself and family, and for that purpose I made a bill of sale." Horsley was also a witness for defendant, and testified: "I talked with Mr. Carter about the suit. He told me his wife had violated the agreement in regard to this division of property, and that he couldn't get anything toward paying his debts. He told me he thought this property was subject to his debts, and I had better look out for my claim. I then commenced suit. On the same day I commenced suit I obtained judgment. Mr. Carter was there and admitted service. He knew that I got judgment. As soon as I got judgment I issued execution. Mr. Carter told me that his wife had violated the agreement, and the property in her possession was subject to his debts. . . . . He told me about the division between himself and wife, and I knew it when I gave instructions to the sheriff to levy on this property.

Since that time Carter has continued to trade right along with me."

It is, however, claimed for appellant that there was no immediate delivery followed by an actual and continued change of possession of the property transferred, and that the transfer was therefore fraudulent and void as against a creditor of the husband.

In this state, either husband or wife may enter into any engagement or transaction with the other respecting property which they might if unmarried. (Civ. Code, sec. 158.) A husband may convey real or personal property to his wife, and whether the property conveyed be his separate property or community property, the presumption is, that it thereby becomes and is thereafter to be treated as her separate property. (*Burkett* v. *Burkett*, 78 Cal. 310; *Taylor* v. *Opperman*, 79 Cal. 468.) And when a wife has separate personal property, the statute provides that she may file an inventory thereof in the office of the recorder of the county in which she resides, and the filing of the inventory is declared to be notice and *prima facie* evidence of her title. (Civ. Code, secs. 165, 166.)

It does not appear when the debt to Horsley was contracted. So far as we can see, it may have been after the transfer to plaintiff. Nor does it appear that he could not just as well have collected his debt out of property belonging to the debtor. But however this may be, it is clear that before commencing his suit he had actual and constructive notice of the plaintiff's title and possession; and we think that title and possession sufficient for all the purposes of this action. (See *Morgan* v. *Ball*, 81 Cal. 93.)

2. The new trial was also asked on the ground of newly discovered evidence. We have carefully read the affidavits submitted, and find nothing in them which would have justified the trial court in granting the motion.

Looking at the whole case, we see no prejudicial error, and we therefore advise that the judgment and order be affirmed.

VANCLIEF, C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.