WILLARD C. SELLECK *et al.*, Trustees, *vs.* SARAH A. THOMPSON.

JUNE 18, 1907.

PRESENT: Douglas, C. J., Dubois, Johnson, and Parkhurst, JJ.

(1)  *Charitable Trusts.  Wills.*

A testatrix by will expressed her desire to devote the greater portion of her estate to charitable purposes, and vested the legal title in certain trustees, giving general directions as to the care of the trust property, designating the name for the fund, and further providing, "and whatever balance there shall remain of said annual income unexpended, my said Trustees are hereby authorized and directed to give to such charitable purposes as they and their successors in office shall judge will do the most real good, giving preference to several different objects, instead of a few":

*Held,* that the intention to create a charitable trust was clear, and the gift was sufficiently definite for judicial cognizance.

*Held,* further, that, the will providing for the nomination and appointment by the trustees of their successors in office, such nominations might be made by them, subject to the final action of the court having general equity jurisdiction.

BILL IN EQUITY for construction of will.

JOHNSON, J.  Bill in equity for the construction of the will of Urania C. Sherburne, which was admitted to probate by the Probate Court of the town of Cumberland, December 4, 1893, and for instructions to the trustees.

The will is set out in the bill.  The following are, however, the only paragraphs thereof which are material upon the questions propounded by the bill:

"*Second.*  Knowing that my honored Mother, Mary Ann Grant, and my only sister, wife of Alexander Thompson, both of said Cumberland, have an abundance of this world's goods of their own, I desire to devote the greater portion of my property to *Charitable Purposes*, and for that reason make the following named bequests, viz.:

"*Third.*  After all the payments shall have been made as aforesaid, I give, bequeath, and devise to Alexander Thompson of said Cumberland and to Byron A. Andrews of Slaterville in said Rhode Island, and to their successors in office,

in *Special Trust*, all moneys, notes, bonds, stocks, and other securities of which I may die possessed, together with the net proceeds of all my Real Estate and all of my interest therein, which may be sold at any time after the decease of my said Mother and sister, and the said securities or the net proceeds thereof together with the net proceeds of said Real Estate whether derived from the use or sale thereof to be kept invested by my said Trustees and their successors in office in securities of a *safe* and *prudent description*, hereby giving to my said trustees full authority to change said securities or any part thereof from time to time as they shall judge to be for the best interest of the Fund hereby created. Said fund to be known as the *Grant Sherburne Fund, so named to perpetuate the name and memory of my honored Father, whose untiring zeal and indomitable energy enables me to create said Fund,* which I *desire* shall be a lasting *Memorial* to *him* and to the *memory* of my *late beloved Husband;* from the net income from said Fund my said Trustees are directed to pay all expenses in the care thereof, pay all taxes which may be legally assessed thereon, pay the following named persons each the sum of Fifty (50) dollars annually during each of their natural lives respectively, not as anything towards their support, but as a present from me yearly which I desire them to use for the purchase of any little extras which may add to their enjoyment, viz.: To my Aunts Abigail Peck, Annjanette Ballou, Harriet A. Peck, Elpha Grant, and my cousin Carrie E. Heaton, and to my friends Addie A. Jillson and Georgiana E. Harris, and whatever balance there shall remain of said annual income unexpended as aforesaid, my said Trustees are hereby authorized and directed to give to such Charitable purposes as they and their successors in office shall judge will do the most real good, giving preference to several different objects instead of a few, and should my Mother and Sister during their lifetime desire to sell any portion of real estate now owned in common with me, my said Trustees are hereby fully authorized and empowered to join with them in such sale either at private sale or public auction and execute and deliver all necessary papers for

the legal conveyance of my interest therein to the purchaser thereof. And at the decease of my said Mother & Sister, my said Trustees and their Successors in office are hereby authorized to manage all interests which I may have at date of my decease in any and all real estate in such manner as they may judge to be financially the best and for the interest of said Fund or to sell the same at private sale or public auction and to execute and deliver all necessary papers to convey all of my interest therein to the purchaser thereof and the net income from the use of my interest in said real estate from date of the decease of my Mother and Sister, or the net proceeds of the sale thereof made as aforesaid to be *added* to said *Sherburne Fund,* which is to be kept *intact* and *the income* thereof *only* to be *used* and *expended* as *aforesaid.*

"Reposing implicit confidence in the judgment and integrity of my said Trustees, and firmly believing that they will honestly and faithfully discharge all their duties under this trust, and that they and their successors will fix a reasonable compensation for their services as said Trustees, And in order that my plans may be fully carried out by my said Trustees and their successors in office, my will is that each Trustee shall during his life time in writing nominate and so far as he can legally do so appoint his successor, and thus continue for the proper management of *said Fund* and the income therefrom. My said Trustees are directed to see to the expenditure of the annual sum bequeathed to Georgiana E. Harris.

"*Fourth.* I give, bequeath, and devise to my said Mother and to my said Sister and to the survivor of them the use and improvements of all my real estate and all interest therein whether the same is owned in common with them or otherwise, to have and to hold the same during their natural lives and to the survivor of them, and I also give to them and the survivor of them all my personal effects *not included in the Sherburne Fund,* or hereinafter bequeathed, they to use said personal effects, and make such disposition thereof as they may deem to be most proper."

The bill further states that Mary Ann Grant, the mother

of the testatrix, and several of the pecuniary legatees mentioned in the third paragraph of said will, have deceased, and that there is ample estate for the payment of the small annuities of fifty dollars per year to the parties entitled to the same under the third paragraph of said will, and that the said Sarah A. Thompson, a party to this bill of complaint, is the sister of the testatrix, mentioned in the second and other paragraphs of said will;

That Alexander Thompson and Byron A. Andrews each accepted the position of executor, and the position of trustee, under said will, and discharged all the duties of executors under said will, including the payment of all debts and charges of every kind against the estate of said Urania C. Sherburne, and the payment of all pecuniary legacies that were due under said will, and the delivery to the legatees of all the articles of property that were specifically given in and by said will, and that each of them has deceased, and by a decree of this court, heretofore entered, Willard C. Selleck and Sarah A. Thompson have been appointed and qualified as trustees under said will, and are now the trustees under said will;

That said Urania C. Sherburne left no children or descendants surviving her, and both her parents were dead, and her only heir at law was the said Sarah A. Thompson, the sister of said testatrix;

That the said Willard C. Selleck and Sarah A. Thompson, as trustees under said last will and testament, now have in their hands and possession a large amount of property of various kinds, but questions have arisen as to whether the trusts of said will are sufficiently certain and definite, and whether the uses and purposes therein expressed are good and valid in point of law, and in accordance with the laws and decisions in this State relating to charitable uses and trusts, and as to whether your orators, as the present trustees under said will, can safely by virtue of said will dispose of and apply the said funds and property now in their possession as such trustees, and whether the present trustees under said will can in the exercise of the powers mentioned

and referred to in the latter portion of the third paragraph of said will fill vacancies from time to time in the trusteeship under said will, and appoint successors in the trusts created thereby, and as to what disposition shall be made of the funds and property from .time to time forming a part of said trust estate.

(1)     In the second paragraph of the will the testatrix expresses her desire to devote the greater portion of her property to charitable purposes.  By the third paragraph the legal title to the trust property is vested in Alexander Thompson and Byron A. Andrews and their successors in office, in special trust.

General directions are given as to the care of the trust property; the name is designated for the fund, and then the charitable purpose is expressed by the language, "and whatever balance there shall remain of said annual income unexpended as aforesaid, my said trustees are hereby authorized and directed to give to such charitable purposes as they and their successors in office shall judge will do the most real good, giving preference to several different objects, instead of a few."

The intention to create a charitable trust is clear.  The testatrix has expressed her desire to devote the greater portion of her property to charitable purposes; has given the same to trustees; and has vested in them the power to select the beneficiaries.  Such a gift is sufficiently definite for judicial cognizance and constitutes a valid gift to charitable uses.

Substantially the same question was decided by this court in *Pell* v. *Mercer*, 14 R. I. 412, where the court held that a bequest of personal estate in trust for such works of religion or benevolence as the executors of the will, after full consideration, should 'select was a good gift to charitable uses. This case was followed and affirmed by *Rhode Island Hospital Trust Co.* v. *Olney*, 14 R. I. 449.  The general current of the decisions, both in this country and in England, is in accord with *Pell* v. *Mercer.* Among the numerous cases are: *Waldo* v. *Caley*, 16 Ves. Jr. 206; *Chapman* v. *Brown*,

6 Ves. Jr. 404; *Moggridge* v. *Thackwell*, 1 Ves. Jr. 464; *Johnston* v. *Swann*, 3 Madd. 457; *Horde* v. *Suffolk*, 2 Mylne & Keen, 59; *Wells* v. *Doane*, 3 Gray, 201; *Rotch* v. *Emerson* 105 Mass. 431; *Suter* v. *Hilliard*, 132 Mass. 412; *Fairbanks* v. *Lamson*, 99 Mass. 533; *Saltonstall* v. *Sanders*, 11 Allen, 446; *Weber* v. *Bryant*, 161 Mass. 400; *Bullard* v. *Chandler*, 149 Mass. 532; *Hinckley's Estate*, 58 Cal. 457; *Kinike's Estate*, 155 Pa. St. 101; *Powell* v. *Hatch*, 100 Mo. 592; *Howe* v. *Wilson*, 91 Mo. 45; and *Power* v. *Cassidy*, 79 N. Y. 602.

The corpus of the trust is to be kept intact and only the income to be used. The selection of the beneficiaries is by the will vested in the trustees. If a scheme of distribution were required, a revision of the scheme would be necessary whenever the trustees made a new selection. This would impose a great and continuing burden of expense upon the fund. We think the selection may well be left, where the testatrix has placed it, in the discretion of the trustees.

As to the nomination and appointment by the trustees of their successors in office, as directed by the testatrix in the will, such nominations may be made by them, subject to the final action of the court having general equity jurisdiction.

*Louis L. Angell* for complainants.

*William B. Greenough, Attorney-General*, in behalf of the State.

