[S. F. No. 12773.   In Bank.—February 20, 1930.]

DAVID OSOSKE, Respondent, v. OTTO KALINOWSKY et al., Appellants.

[4]

Marion Vecki for Appellants.

L. Karmel for Respondent.

Henry E. Monroe and Devlin, Devlin & Diepenbrock, *Amici Curiae.*

CURTIS, J.—Action for the specific performance of a contract for the sale of real property executed by the defendant Otto Kalinowsky in favor of the plaintiff, which contract bears date the third day of May, 1924. The defendant Bertha Kalinowsky did not sign the agreement. The defendants are husband and wife. It is not denied that the plaintiff performed all of the conditions of said agree-

ment on his part to be performed, and that he within the time contemplated by said agreement tendered the sum of $500, the purchase price called for by said contract, and demanded of defendant Otto Kalinowsky a deed to said real property in compliance with said contract. The defendant refused to execute or deliver to plaintiff any deed to said real property, and the defense interposed by said defendant and also by his wife, Bertha Kalinowsky, who has been made a party to this action, was that said real property at all times since the same was purchased, and at the date of said agreement of sale, was the separate property of the said Bertha Kalinowsky. Upon the issue thus made by the pleadings as to the ownership of said real property the court found, "It is not true that Bertha Kalinowsky, the wife of Otto Kalinowsky, is or at any time was the owner of said property, except as to her community interest therein." The trial court in accordance with the findings rendered judgment in favor of the plaintiff and the defendants have appealed.

The defendants' sole contention is that the evidence is insufficient to support the finding of the court that Bertha Kalinowsky was not the owner of said real property. The defendants Otto Kalinowsky and Bertha Kalinowsky were husband and wife on December 14, 1907, the date on which the real property in suit was conveyed from B. Paige & Co., a corporation, to the defendant Otto Kalinowsky. This deed was recorded on December 19, 1907, and said real property stood of record in the name of Otto Kalinowsky from said last-named date until over six months after the execution and delivery by the said Otto Kalinowsky of said agreement of sale. It is also admitted that after the acquisition of said real property Otto Kalinowsky instituted an action in the Superior Court of the city and county of San Francisco under the act popularly known as the "McEnerney Act" and secured a decree, made and entered on April 7, 1908, declaring and establishing his title to the real property described in the complaint in said action. The real property involved herein is a lot seventy-five feet in length and twenty-five feet in width and is located on the south side of Augusta Street in the city and county of San Francisco. The real property described in said decree in the McEnerney Act comprised the whole of said lot excepting

the south twenty-five feet thereof. Bertha Kalinowsky was not a party to the action brought under the "McEnerney Act." Neither was her name mentioned in any of the proceedings therein. On May 3, 1924, the defendant Otto Kalinowsky executed and delivered to plaintiff the agreement of sale which is the foundation of this action. As before noted, Bertha Kalinowsky did not sign said agreement. The evidence shows, however, that the day after this agreement was signed Bertha Kalinowsky called at the home of the plaintiff and asked plaintiff's sister if plaintiff had bought a lot for $500. Plaintiff's sister testified further regarding this visit and as to what was said by Mrs. Kalinowsky on this occasion. "She said her husband had told her he had sold the lot to my brother and she wanted to know if it was so. So I told her, yes, and my brother came in and spoke to her. After some conversation she said, 'Now don't tell my husband I came here.' . . . I did not ask her why. But afterwards my brother spoke to her for a while and then he said, 'Well, isn't that a good price for the lot, are you satisfied?' 'Oh, yes,' she said, 'Oh, yes.' That was the substance of the conversation. I don't know why Mr. Ososke asked her if she was satisfied. I don't know why she came. She said she wanted to know if it was true that my brother had bought the lot from her husband."

Plaintiff introduced evidence to the effect that the agreement of sale was just and equitable and that the sum of $500 was a fair price to pay for said lot. This latter evidence was not contradicted by the defendants. They confined their evidence to the status of the property, and each of them testified in support of their claim that the property was the separate property of Bertha Kalinowsky and that the property had been purchased with funds acquired by the defendant Bertha Kalinowsky prior to her marriage to Otto Kalinowsky. Bertha Kalinowsky testified that the money used to purchase said lot was money which she had brought from Germany, together with money which she had earned before her marriage. Her testimony was in a slight degree corroborated by a witness who testified that she had known Mrs. Kalinowsky before her marriage and that Mrs. Kalinowsky "worked hard and she brought some money from Germany with her."

Defendants contend that as both of them testified that the real property in question was purchased with the separate funds of Bertha Kalinowsky and as there was no evidence to directly contradict their testimony in that regard, their testimony upon the status of the property stands uncontradicted. It is true that there is no evidence directly contradicting the statements of Bertha Kalinowsky that she brought some money from Germany and used it with other money earned by her prior to her marriage in the purchase of said real property. That is, no witnesses testified directly that she did not purchase said property with her separate funds. We do not think such evidence was indispensable in order to produce a conflict in the evidence as to whether said property was or was not her separate property. Any evidence which would tend to establish the fact that said property was the community property of Mr. and Mrs. Kalinowsky would be in conflict with the testimony of the defendants that it was the separate property of Mrs. Kalinowsky.

There was evidence, in our opinion, which indirectly contradicted the statement of the defendants. In the first place, the title to the property was taken in the name of Mr. Kalinowsky during coverture, and the presumption is, therefore, that the property was the community property of the spouses. This presumption is, of course, disputable. (*Van Camp* v. *Van Camp*, 53 Cal. App. 17 [199 Pac. 885]; *Freese* v. *Hibernia Sav. etc. Soc.*, 139 Cal. 392, 394 [73 Pac. 172]; *Estate of Warner*, 167 Cal. 686, 688 [140 Pac. 583].) In addition to the presumption that the property was community property, the evidence shows that the defendant Otto Kalinowsky very soon after acquiring it instituted an action in his own name under the "McEnerney Act" to quiet his title to a portion of said real property. His wife was not made a party to said action and, as we have already noted, her name does not appear in those proceedings. It is hardly probable that those proceedings were taken without her knowledge. After a judgment was obtained in said proceeding quieting Otto Kalinowsky's title to the real property involved therein, he continued to hold the record title to the whole of said real property for over sixteen years when, by the agreement of sale of May 3, 1924, he purported to contract for the sale of the said real property in his own name, and

without the concurrence or consent of his wife. The next day after the execution of said agreement of sale the wife, Bertha Kalinowsky, having heard from her husband that he had sold a lot to the plaintiff, called upon the plaintiff at his home and asked if he had bought a lot for $500. On being informed that he had, she merely cautioned the plaintiff and his sister, who was also present at this conversation, not to tell her husband of her visit to plaintiff's house. She was then asked by the plaintiff if the price which was to be paid for the lot was not a fair price and if she was satisfied, to which she replied, "Oh, yes." She then left without making any objections to the sale and without making any claim that she was the owner of the lot, or that her husband had no right to sell the same. ■ The evidence of the acts of the defendants from the time the property was conveyed to Otto Kalinowsky up to and after the time he had agreed to sell the same to the plaintiff, as we view it, tended in a greater or less degree to show that the property was the community property of the defendants and under the management and control of the husband. As such it was in substantial conflict with the evidence of the defendants that said property was purchased with the separate funds of the defendant Bertha Kalinowsky. The trial judge having resolved this conflict in favor of the plaintiff, this court is without the power to disturb his finding upon that question.

■ Some reliance is placed by the defendants upon the phrase "subject to the owners' approval" incorporated in the contract of May 3, 1924, as substantiating their claim that Otto Kalinowsky was not dealing with his own property when he executed and delivered said contract. However, the explanation given by the plaintiff that he copied a blank form used by real estate brokers in making up the contract is plausible and was evidently accepted by the trial court.

■ The real property was acquired prior to the amendment in 1917 (Stats. 1917, p. 829) of section 172 of the Civil Code, which deals with the management and control of community property. The husband, therefore, had the absolute management and control thereof and could sell or encumber the same without his wife's consent. The status of the property was fixed by the law as it existed at the time of its acquisition (*Spreckels* v. *Spreckels*, 116 Cal. 339

[58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228]), and the amendment did not change the vesting nor give to the wife any greater right in the property than she possessed prior to the amendment. (*Roberts* v. *Wehmeyer*, 191 Cal. 601 [218 Pac. 22].) If, therefore, as found by the trial court, this property was the community property of the defendants, the husband, Otto Kalinowsky, could make a valid contract for its sale, the wife's consent was not necessary to the validity of said contract, and said contract was binding upon both of them. The judgment should, therefore, be affirmed.

Plaintiff further relies upon the judgment quieting Otto Kalinowsky's title under the "McEnerney Act." The case was tried and decided under the assumption that the decree in that proceeding covered the whole of said lot. The findings and judgment were made and rendered under the same assumption. After the case had been appealed and after all of the briefs had been filed, it was discovered that said McEnerney decree did not cover the south twenty-five feet of said lot, and accordingly, an order diminuting the record herein showing this fact was then upon the stipulation of the parties made by this court. This order had escaped our attention at the time of the rendition of our former opinion in this action, and for that reason we treated said McEnerney decree as applying to the whole of said real property and conclusive of Otto Kalinowsky's ownership thereof as community property. Whatever force or effect the McEnerney decree may have in determining title to said property, it can only apply to that portion thereof embraced within the terms of said decree. The contract of sale is for the whole of said land at a fixed price of $500. The judgment appealed from decrees the specific performance of said contract and includes land within as well as land without the terms of said McEnerney decree. The decree, therefore, cannot be relied upon in support of said judgment which affects property not embraced within said decree.

The judgment is affirmed.

Richards, J., Shenk, J., Seawell, J., and Langdon, J., concurred.