774

## W. L. Honnold, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 55211.   Promulgated May 23, 1934.

*E. C. Alvord, Esq.*, and *Paul Armitage, Esq.*, for the petitioner.
*J. A. Adams, Esq.*, for the respondent.

### OPINION.

Marquette: The respondent has determined a deficiency in income tax for the year 1927 in the amount of $510,545.33.   The petitioner asserts that the respondent has erred (1) in including in his gross income the income of "The Honnold Foundation," including the income arising from the sales and exchanges of certain assets; (2) in computing the profit arising from such sales and exchanges; and (3) in denying him the right to deduct from his gross income donations made to the Foundation in the amount of $12,638.53.   The second issue has been reserved for consideration until the first and third issues have been determined.

The facts have been stipulated and the stipulation is made a part hereof.   The pertinent facts thus disclosed are: On June 24, 1926, at Los Angeles, California, the petitioner and his wife executed the following written instrument and accompanying declaration of policy, such declaration being the only one that had been executed up to the time of the hearing of this case:

This Indenture made this 24th day of June, 1926, by the undersigned William L. Honnold and Caroline Honnold, of Los Angeles, California, Witnesseth:

Whereas, said William L. Honnold has created a certain trust fund or foundation which he has designated and which is to be known as The Honnold

FOUNDATION, and has transferred to and vested in the undersigned William L. Honnold and Caroline Honnold as the trustees of said fund or foundation certain securities to be held by them in trust for the uses and purposes and subject to the terms, provisions, and conditions hereinafter set forth; and

WHEREAS, said trust fund so created and said securities so transferred and vested in trust now consist of seventy-four hundred ninety-five (7,495) shares of preferred stock of General and Mining Investments, Limited, a Canadian corporation,

Now, THEREFORE, THIS INDENTURE FURTHER WITNESSETH:

The trustees for themselves and their successors in office do hereby certify and declare that the creation of said trust fund and the assignment and vesting of said securities in the trustees was and is without consideration passing from the trustees as such; and that the trustees have received and accepted said securities, and they and their successors in office will hold said securities together with any additional moneys, securities, and properties that may be transferred to or vested in the trustees or their successors in office during the life of this trust pursuant to the provisions hereof, in trust for the uses and purposes herein stated and subject to the following terms, provisions, and conditions, to-wit:

1. Said trust fund and the trust hereby created shall be known as THE HONNOLD FOUNDATION.

2. In the event of the death of said William L. Honnold leaving said Caroline Honnold him surviving, said Caroline Honnold shall be entitled to an annuity for and during her natural life to be paid from or to be purchased with income and/or principal of the trust estate, such annuity to be payable to her at the rate of Fifty Thousand Dollars ($50,000) per annum in quarterly payments commencing three (3) months after the date of the death of said William L. Honnold and ending at the termination of the life of said Caroline Honnold. The trustees may pay said annuity from the income and/or principal of the trust estate or they may purchase said annuity from a life insurance company of good standing at such time, in such manner, and on such terms and conditions as they may consider convenient in the administration of the trust.

3. Subject to the provisions of the preceding paragraph, said trust or foundation is created and organized and shall be administered exclusively for religious, charitable, and educational purposes. Any and all funds of the trust estate and any and all income derived therefrom that shall be paid, applied, or set aside by the trustees pursuant to the provisions of subdivision (c) of division 4 hereof shall be used exclusively for religious, charitable, or educational purposes and no part thereof shall at any time be applied for or inure to the benefit of any private shareholder or individual.

4. Subject to the limitations and restrictions imposed by the provisions of the preceding paragraph, the trustees acting hereunder shall have full power and authority throughout the continuance in effect of said trust or foundation to do and perform the following things:

(a) To hold, maintain, and continue in trust said securities so transferred to and vested in them, together with any additional securities, moneys, and properties that may be transferred to or vested in them and become subject to the provisions hereof as herein provided; to sell, exchange, convert, and assign said securities and properties; to receive and collect all dividends, interest, issues, and profits that may accrue to or be paid respecting the trust estate; to invest and reinvest each and every part of the trust estate, including said dividends, interest, issues, and profits, in such securities, properties, and investments

as the trustees may deem proper, without limitation or restriction of any kind as to the character or class of such securities, properties, and investments; and in all respects to manage, handle, and dispose of each and every part of the trust estate in such manner and upon such terms and conditions as the trustees may deem proper.

(b) To make, enter into, execute, and issue any and all contracts, agreements, obligations, and debentures of every kind and character, and to charge and encumber to such extent and in such manner as the trustees may deem advisable any and all of the properties and assets of the trust estate for the performance and discharge of any and all such contracts, agreements, obligations, and debentures; provided, however, that no such contract, agreement, obligation, or debenture shall obligate or shall be construed to obligate the trustees or either of them personally, but shall bind and shall be construed to bind only the properties and assets of the trust estate.

(c) To pay, apply, and/or set aside all or any part of the net income from the trust estate and any or all of the principal thereof, to or for the use or benefit of any person, corporation, association, or institution for the purpose or promoting, assisting, or carrying on any religious, charitable, or educational activity or object which the trustees acting in consonance with the declaration of policy hereinafter referred to, may consider deserving or worthy of encouragement or support.

(d) To maintain an office or offices, to employ any and all officers, agents, and assistants that the trustees may deem necessary or desirable for administering said trust or foundation or carrying on the work thereof pursuant to the provisions hereof, and to carry on any work and to incur any expense that the trustees may consider necessary or desirable in the conduct of the affairs of the trust or foundation.

(e) To receive from the gross income of the trust estate reasonable compensation for their services as trustees in carrying on the work of the trust or foundation pursuant to the provisions hereof.

5. Said William L. Honnold and Caroline Honnold or their survivor shall have the right to designate from time to time persons, corporations, associations, and institutions that shall be or become beneficiaries of the trust hereby created and declared, and to determine from time to time any and all matters respecting the administration of said trust, provided such designation or such determination be made so as not to permit the use of any of the trust fund for any other than religious, charitable, or educational purposes, and so as not to permit any of the earnings of the trust fund to inure to the benefit of any private shareholder or individual. Such designation of beneficiaries and such determination shall be embodied in a declaration of policy which shall be in writing and shall be deposited with and held by the trustees. Said William L. Honnold and Caroline Honnold or their survivor may at any time amend in any respect whatever any declaration of policy then in effect hereunder or substitute a new declaration of policy for the one then in effect. The trustees acting hereunder shall at all times conform to the provisions of said declaration of policy.

6. Said William L. Honnold and Caroline Honnold or either of them shall have the right at any time during the life of the trust or foundation hereby created to add or cause to be added to said trust fund and to transfer to and vest in or cause to be transferred to or vested in the trustees acting hereunder, by deed, will, or otherwise, any additional moneys, securities, and properties to become subject to the provisions of the trust hereby created. Such additions to the trust fund may be absolute and without limitation or condition, or may be

made on such terms and subject to such limitations, conditions, and provisions as the trustees may accept or impose.

7. Each of the two trustees named herein shall have power and authority to designate his or her successor as trustee, and on making such designation may fix the compensation of such successor and may specify the manner of succession to the office of such successor. Said William L. Honnold may increase the number of trustees to three by appointing an additional trustee, may fix the compensation of said additional trustee and may specify the manner of succession to the office of such additional trustee. Such additional trustee shall hold office at the pleasure of said William L. Honnold. If on the death, renunciation, or discharge of any trustee acting hereunder, his or her successor shall not have been designated pursuant to the provisions hereof, the trust shall survive to the other trustee or trustees. If in the event of such survival there remains but one trustee, he or she may act alone or may appoint a cotrustee, and in the event of such appointment, may fix the compensation of such cotrustee and may specify the manner of succession to the office of such cotrustee. If there be no trustee named or qualified to act hereunder, a trustee shall be appointed by a court of competent jurisdiction on the application of any person or corporation for the benefit of which funds of the trust estate may theretofore have been paid or applied hereunder, or on the application of any person or corporation holding any funds or properties of the trust. If there be three trustees, the act of one or the act of two shall be effectual if the other or others shall have given the remaining trustee or trustees authority in writing to act for all; and if there be two trustees, the act of one shall be effectual if the other shall have given the remaining trustee authority in writing to act for both. The trustees named herein shall act as such without giving bond, but their successors and any trustee appointed as hereinabove provided and his or her successors may be required by the person or court making the appointment to give bond for the faithful discharge of their duties, which bond shall be of such character and in such amount as may be fixed by the person or court making the appointment. Any designation or appointment of trustee by an individual or any exercise of authority by an individual pursuant to the provisions of this paragraph shall be made by an instrument in writing filed among the records of the trust.

8. At any time during the life of said William L. Honnold and Caroline Honnold or the survivor of them the trustee or trustees then acting hereunder may terminate the trust by transferring the entire trust fund then remaining to a corporation or corporations organized and operated exclusively for religious, charitable, and/or educational purposes; and if the trust be not so terminated then on the demise of the survivor of said William L. Honnold and Caroline Honnold the trustee or trustees then acting hereunder shall terminate the trust by transferring the entire trust fund then remaining to such a corporation or to such corporations. Should the declaration of policy hereinabove referred to designate such corporation or corporations such transfer shall be made to the corporation or corporations so designated. Any such transfer terminating the trust shall be made conditional on the assumption by the transferee or transferees of such obligations then outstanding as may have been created or entered into pursuant to the provisions hereof. Any such transfer if made during the lifetime of said William L. Honnold or Caroline Honnold or the survivor of them shall be made on such terms and conditions and subject to such provisions as they or their survivor may specify; and if made after the demise of the survivor of them shall be made on such terms and conditions and subject to such provisions as the trustees acting pursuant to said declaration

of policy may specify; provided however, that such terms, conditions, and provisions shall not permit the use of any of the trust fund for any other than religious, charitable, or educational purposes and shall not permit any of the earnings of the trust fund to inure to the benefit of any private shareholder or individual.

9. (a) Said William L. Honnold, acting in conjunction with said Caroline Honnold, shall have the power to amend this declaration of trust or any of the provisions hereof in any respect whatever or to terminate and revoke the trust in whole or in part by filing among the records of the trust a notice of such amendment or of such termination and revocation as the case may be.

(b) In the event of the death of said Caroline Honnold leaving said William L. Honnold her surviving, said William L. Honnold shall have the power, in a year subsequent to the year in which the notice hereinafter described is filed as hereinafter provided, to amend this declaration of trust or any of the provisions hereof in any respect whatever or to terminate and revoke the trust in whole or in part, provided he shall file among the records of the trust a notice declaring that he will make such amendment or will terminate and revoke the trust in whole or in part in a year specified in said notice subsequent to the year in which said notice is so filed. Said amendment or said termination and revocation as the case may be shall be made by filing among the records of the trust in the subsequent year specified in said notice an instrument in writing setting forth such amendment or declaring such termination or revocation to be effective.

(c) Harvey S. Mudd of Los Angeles, California, shall have the power individually at any time during the life of said William L. Honnold to amend this declaration of trust or any of the provisions hereof in any respect whatever or to terminate and revoke the trust in whole or in part by filing among the records of the trust a notice of such amendment or of such termination and revocation as the case may be; provided, however, that he shall not have the power to amend, terminate, or revoke any of the provisions of division 2 hereof or to amend, terminate, or revoke any of the powers conferred upon said William L. Honnold and Caroline Honnold or upon said William L. Honnold by the provisions of this division 9.

(d) In the event of the termination and revocation of the trust as provided in this division 9, the title to the trust property affected thereby shall revest in said William L. Honnold subject to such obligations of the trust then outstanding as may have been created or entered into pursuant to the provisions hereof.

The said declaration of policy is as follows:

Pursuant to the provisions of division 5 of that certain declaration of trust dated the 24th day of June, 1926, which created The Honnold Foundation, we, William L. Honnold and Caroline Honnold, do hereby declare it to be our policy and desire that on the demise of the survivor of us, after the discharge of all obligations of the trust then outstanding including all authorized unpaid pledges recorded in the minute book of the foundation, the trust fund then held by the trustee or trustees acting under said declaration of trust, including all the accumulated and accrued income, shall be transferred by the trustee or trustees to *Claremont College*, a California corporation.

The petitioner was born in Illinois in 1866. His profession is that of mining engineer. After practicing his profession in various parts

of the United States and Europe, South Africa, and other parts of the world, he first became a legal resident and inhabitant of California in 1924.

During the years 1926 and 1927 the above declaration of trust was not amended, modified, or revoked in any manner. No persons other than those named therein have acted or been appointed as trustee. The declaration of trust has been twice amended since 1927. One amendment dated December 31, 1931, among other things, provided that Caroline Honnold should be entitled to an annuity of $6,000 per annum on and after January 1, 1932. Certain other amendments were made on December 30, 1932, among which was one conferring on Caroline Honnold individually during her life the power to amend, administer, or revoke the trust. The Honnold Foundation was created for the purpose of enabling the petitioner and his wife, Caroline, to dispose of substantially their entire estate for religious, charitable, and educational purposes. It was conceived by them many years prior to 1926. The petitioner's wife is the only person dependent upon him and they are without descendants. Their collateral relatives are well provided for. In accordance with this plan, which was conceived and developed by petitioner and his wife, they have provided by their wills that upon the death of the survivor the entire estate of such survivor shall pass to the Foundation after the satisfaction of certain personal pecuniary bequests. The petitioner has at no time received any part of the income of the Foundation. The power of revocation vested in the petitioner and his wife and in Mudd was the conception of the petitioner's counsel. Mudd and the petitioner have been friends since 1924 and have offices in the same suite. They have had some common business interests but have never been partners. They are not related by blood or connected by marriage. On December 6, 1932, Mudd was first informed that the power of revocation had been vested in him.

During the calendar year 1927 the persons designated as trustees, acting in accordance with the powers and duties conferred upon them by the declaration of trust, sold and exchanged certain securities. Such securities had been received from the petitioner by such persons under and by virtue of the provisions of the declaration of trust. The petitioner and the respondent disagree on the amount of profit realized from such sales and exchanges, and this issue is reserved for a further hearing in case it is determined that the petitioner is taxable on the income of the Foundation.

During the calendar year 1927 the persons designated as trustees in the declaration of trust and acting under the powers therein conferred upon them received interest in the amount of $8,714.75, dividends in the amount of $22,912.50, incurred expenses amounting

to $5,173.71, paid taxes in the amount of $332.50, and made contributions to corporations conducted solely for charitable, educational, or religious purposes, no part of the earnings of which inured to the benefit of any private shareholder, or individual, in the amount of $6,296.44. The above were the only expenditures or distributions made during the calendar year 1927, none of which were distributed to or received by the petitioner either directly or indirectly.

The petitioner did not report in his income tax return for the year 1927 any income received or distributions made by the persons designated as trustees in the declaration of trust. The respondent has determined that such income and distributions should be reported in the income tax return of the petitioner for that calendar year.

The petitioner transferred to himself and his wife, to hold as trustees for the Foundation, 7,495 shares of the preferred stock of the General & Mining Investments, Ltd., a Canadian corporation, on June 24, 1926, and 6,000 shares of the common stock of the above named corporation, on August 18, 1927. The stock referred to above, both the 7,495 shares of preferred and 6,000 shares of common stock, was acquired by the petitioner between the dates of November 12, 1895, and 1922, from earnings of the petitioner during said period. The preferred and common stock of the General & Mining Investments, Ltd., referred to above was represented by " share warrants " which had been received on or after March 15, 1926, in exchange for 7,495 shares of preferred and 6,000 shares of common of the said General & Mining Investments, Ltd. Said " share warrants " were transferable by bearer. The stock referred to above, both preferred and common, was sold and/or exchanged during the year 1927, and the profits derived therefrom and from the sale of securities received in exchange therefor have been included by the respondent in petitioner's gross income. None of the stock referred to above was in California either before or at the time of the creation of the Honnold Foundation, but on March 15, 1926, and thereafter up to about March 15, 1927, such stock was in New York, in the custody of Rollin B. Burton, who was the petitioner's confidential business agent from December 1, 1916, to January 1, 1928. On or about March 15, 1927, the share warrants covering the 6,000 shares of the common stock were forwarded to the petitioner in California. The 6,000 shares of common stock of the General & Mining Investments, Ltd., referred to above, were in California in the possession of the petitioner, William L. Honnold, on August 18, 1927, and shortly thereafter were forwarded to his confidential agent, Rollin B. Burton, in New York City.

On or about June 24, 1926, the petitioner advised Burton that he had transferred to the Honnold Foundation the above mentioned

7,495 shares of the preferred stock of the General & Mining Investments, Ltd., and on or about August 18, 1927, advised Burton that he had transferred to the Honnold Foundation the above-mentioned 6,000 shares of the common stock of the said corporation.

During the calendar year 1927 the petitioner gave an amount not less than $12,638.53 to the persons designated as trustees in the declaration of trust for use by them pursuant to the provisions of such instrument, without receiving any consideration therefor. The petitioner claimed this amount as a charitable contribution to the Foundation and deducted it in his return for the year 1927. The respondent disallowed the deduction. In the event that the petitioner's net income as finally determined is in excess of his net income as shown in his return, the petitioner, upon recomputation, will be entitled to deduction of his contributions or gifts made within the calendar year 1927 to the extent allowable under section 214 (a) (10) of the Revenue Act of 1926.

It was stipulated that should the Board hold the respondent erred in his determination that the petitioner is taxable on the income received by the persons designated as trustees in the declaration of trust, that is, on the profits arising from the sale or exchange of the securities above mentioned made in 1927, and the interest and dividends received by them less expenses and taxes paid or incurred, then the income as determined by the respondent, upon which the deficiency for the year 1927 was proposed by him, adjusted in accordance with the Board's decision, should be increased by $14,221.72, which amount represents nontaxable dividends received, expenses incurred, and donations made, by the persons referred to above as trustees and allowed as deductions from the income of the petitioner for the year 1927 in the deficiency notice from which this appeal is taken, and that the Board may find accordingly.

Respondent has included the net income of the Honnold Foundation for the year 1927 in the gross income of the petitioner. In his deficiency notice he grounded his determination on section 219 (g) and (h) of the Revenue Act of 1926. He now makes the further contention that the Honnold Foundation is not a valid trust, for the reason that its beneficiaries, if in fact there be any, are so indefinite that the trust can not be enforced.

The material parts of section 219 (g) and (h) of the Revenue Act of 1926 are as follows:

(g) Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

(h) Where any part of the income of a trust may, in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or be held or accumulated for future distribution to him, * * * such part of the income of the trust shall be included in computing the net income of the grantor.

In our opinion subdivision (h) has no application to this proceeding. The trust here involved could have been revoked in the year before us only by the petitioner in conjunction with his wife, or by Mudd, acting alone. The right of the petitioner, acting alone, to revoke the trust after the death of his wife has no bearing on issues before us, since this power was in abeyance during 1927. *Lewis* v. *White*, 56 Fed. (2d) 390; *Langley* v. *Commissioner*, 61 Fed. (2d) 796; *Faber* v. *United States*, 1 Fed. Supp. 859; *Mabel A. Ashforth et al., Executors*, 26 B.T.A. 1188; *Francis J. Stokes*, 28 B.T.A. 1243.

The respondent asserts that, since in 1927 the interest of the petitioner's wife in the trust fund was contingent upon her surviving the petitioner, she was not a beneficiary within the meaning of section 219 (g). This contention must be denied on the authority of *Bessie R. Jones*, 27 B.T.A. 171; *Smith* v. *Commissioner*, 59 Fed. (2d) 631; *Iola Wise Stetson*, 27 B.T.A. 173; *Edmund O. Schweitzer*, 30 B.T.A. 155. Nor is this rule defeated by reason of the fact that the power is vested jointly in a husband and wife. *Edmund O. Schweitzer, supra.* Cf. *Bessie R. Jones, supra*, and *Margaret A. Holmes*, 27 B.T.A. 660.

The situation, in our opinion, is not altered by the fact that the wife joined in the declaration of trust. She did not purpose to convey anything. The declaration recites that the petitioner had created a trust fund and transferred it to himself and wife as trustees and that they, as trustees, had received the fund. The respondent attempts to show that these recitals are untrue. He asserts that the trust fund or at least a part of it, when assigned, was community property. It is stipulated that both the common and preferred stocks assigned to the trustees were acquired by the petitioner prior to 1923 and paid for from his own earnings. It appears to be admitted that until he became domiciled in California in 1924, these stocks constituted his separate property. The respondent invites our attention to section 164 of the Civil Code of California as amended in 1917, which in effect provides that personal property acquired elsewhere than in California, wherever situated, is community property, if it would not have been separate property if acquired while domiciled in that state. In *In re Thornton's Estate*, 19 Pac. (2d) 778, the Supreme Court of California held that the above section was constitutional in so far as it affected personal property acquired elsewhere and brought into the state by spouses domiciled there after the section was amended in 1917. The court refused to pass on the validity of the act in so far as it

affected personal property which had not been brought into the state, for the reason that at the time of his death Thornton owned no personal property situated outside the state. A rehearing was granted in that case on March 1, 1933, and we are not informed what further action the court has taken. The respondent urges us to hold not only that the 6,000 shares of common stock which were brought into California in 1927 and remained there for a short time, but also the 7,495 shares of preferred stock which were never brought into California, constituted commuunity property.

Even if it were necessary, we would hesitate to pass upon the constitutionality of this state statute, especially since the decision of the Supreme Court of California does not appear to be final and also because it has refused to pass upon the validity of the act in so far as it affects personal property not brought into the state. However, we do not think that it is material to this proceeding whether the stock was the separate property of the petitioner or the property of the community, and for the purpose of this opinion, we will assume that the whole corpus of the trust, when assigned to the trustees, was community property.

The various California acts affecting this character of property prior to the amendment of section 161 of the Civil Code in 1927 are set forth in *John W. Preston*, 21 B.T.A. 840, and need not be restated. In *Stewart* v. *Stewart*, 269 Pac. 439, the Supreme Court of California, referring to and approving its opinion on the former appeal in the same case (199 Cal. 318; 249 Pac. 197) rendered in 1926, said:

* * * In that opinion we held that the long-established doctrine of this state was, as reiterated and confirmed by this court in *Spreckels* v. *Spreckels*, 172 Cal. 775, 158 P. 537, that the husband was during marriage "the sole and exclusive owner of all of the community property, and that the wife had no title thereto, nor interest or estate therein, other than a mere expectancy as heir, if she survived him." We further pointed out, what was declared in more recent decisions of this court, that legislation enacted subsequent to the rendition of said last-mentioned decision had not in any manner changed or modified said doctrine as to the wife's right in community property acquired in, or prior to, the year 1918, the year the parties purchased the real property described in the complaint herein. We saw no escape from that conclusion at the time of the rendition of that opinion, and nothing has since been brought to our attention to cause us to doubt the correctness of our views as thus expressed. The opinion as then rendered must now stand as a correct embodiment of the views of this court upon the questions therein considered and determined.

On the second appeal the attention of the court was called to the amendment of 1927 (161 a) to section 161 of the Civil Code which, in effect, declares that the interests of husband and wife in community property are "present, existing and equal interests" under the

management and control of the husband, and in response the court said:

> * * * This section of the Code, whatever effect it may have upon community property acquired subsequent to its effective date, cannot in any manner relate to or govern the ownership of property acquired prior thereto.

To the same effect see *Ososke* v. *Kalinowsky*, 285 Pac. 318. See also *Hirsch* v. *United States*, 62 Fed. (2d) 128; certiorari denied, 298 U.S. 735.

The respondent, however, insists that the provision of section 172 of the Civil Code to the effect that a husband may not make a gift of community property " without the written consent of the wife " is demonstrative of the fact that the petitioner's wife had at least a present interest in such property. This contention is at variance with the decision of the Supreme Court of California in *Lahaney* v. *Lahaney*, 281 Pac. 67, and the cases there cited. In that case Joseph F. Lahaney, just prior to his death, conveyed four parcels of land, by way of a gift, to his wife and sister, each to have an undivided one-half interest therein. His wife brought suit to have her interest in the lots determined, and for partition. In passing on these questions the court said:

> At the time of his aforesaid conveyances of said four parcels of land in equal undivided interests to the two grantees named therein, Joseph F. Lahaney was the sole owner of the entire vested estate and interest in said parcels of land. Being community property, the interest of his wife therein at the time of such conveyance was " a mere expectancy, and [possessed] none of the attributes of an estate, either at law or in equity." *Stewart* v. *Stewart*, 199 Cal. 318, 335, 249 P. 197, 201, and cases cited.
>
>    *       *       *       *       *       *       *
>
> * * * This deed of Joseph F. Lahaney was not as to any portion thereof *void*. This the respondents also concede to be the law as particularly laid down in the case of *Spreckels* v. *Spreckels*, 172 Cal. 775, 158 P. 537, 539. The language of this latter decision is instructive as having particular reference to the effect of the amendment to section 172 of the Civil Code made in the year 1891 (St. 1891, p. 425), requiring the consent in writing of the wife to the husband's gift or conveyance without a valuable consideration of the community property, and with respect to which it is stated in said decision, written by Mr. Justice Shaw and concurred in by Mr. Justice Sloss, as follows: " We are satisfied that the proviso of 1891 does not render a gift of community property by the husband without the consent of the wife void as to him, nor confer upon him, in his lifetime, or upon his personal representative after his death, any right or power to revoke the gift or recover the property. There is nothing in the language to express the idea that the title does not, as before, remain wholly in him. * * * Neither does the proviso purport to vest in the wife * * * any present interest or estate in the community property given away by the husband without her written consent." It thus follows that the aforesaid deed of Joseph F. Lahaney was not a *void*, but was a *valid* deed, subject only to the right in the wife to institute, seasonably, in equity an action to revoke said deed and reinstate the property as " community property,

with the title vested in the husband and subject to sale by him, as before."
*Spreckels* v. *Spreckels, supra.* * * *

The court then held that, the husband having died, the widow was entitled only to a half interest in the community property and, having received this, she had no cause to complain. From the above authorities we reach the conclusion that at the time of the execution of the declaration of trust the petitioner was the sole and exclusive owner of the stock assigned to the trustees; that his wife had no title thereto or interest or estate therein other than a mere expectancy as heir, if she survived him, and that her veto power on his making gifts vested in her no present interest or estate in the stocks. It thus appearing that she conveyed no property right, we do not think that she was a " grantor " within the meaning of section 219 (g). On the other hand, it is clear that she is a beneficiary, and, as such, we think her interest was adverse to the petitioner. If the trust had been revoked the title would " revest " in him. Still assuming that the stocks were community property, we find that the wife had consented in writing to the assignment of the corpus to the trust and that upon revocation it was to revest in the husband. Under these circumstances, upon revocation the property revested was either the separate property of the petitioner (*Carter* v. *McQuade*, 83 Cal. 274; 23 Pac. 348; *Yoakam* v. *Kingery*, 126 Cal. 30; 58 Pac. 324; *Perkins* v. *Sunset Telephone & Telegraph Co.*, 155 Cal. 712; 103 Pac. 190), or it remained community property subject to such rights in the wife as the laws of California provide. The petitioner's wife being a beneficiary, the case is within the letter of the section and, her interest being adverse to him, it falls within its spirit. *Reinecke* v. *Northern Trust Co.*, 278 U.S. 339.

The only remaining power of revocation which could have been exercised during the year before us is the one residing in Mudd. In view of the fact that this power could be exercised by Mudd alone and not in conjunction with the petitioner, this issue must be resolved against respondent. *Valentine Bliss*, 26 B.T.A. 731, and *Sidney R. Bliss*, 26 B.T.A. 962.

Lastly, the respondent assails the validity of the trust on the ground that its provisions as to charities are so indefinite, the selection of them being left to the discretion of the trustees, that no court could enforce them and therefore there are in fact no beneficiaries of the trust. In support of this contention he relies on *Levy* v. *Levy*, 33 N.Y. 107; *Prichard* v. *Thompson*, 95 N.Y. 76; and *Tilden* v. *Green*, 130 N.Y. 29; 28 N.E. 880. These cases sustain the respondent, but they are not in harmony with the decisions of the courts of many of the other states. It may be stated in passing that the rule in New York has been materially changed by section 113 of the Real Property Law of that state.

The question for our decision is not whether the trust here involved would be valid under the laws of New York, but whether it would be sustained in California. The Supreme Court of that state has declared that instead of indefiniteness as to beneficiaries being a defect, it is an essential element of a valid charitable trust. *Estate of Hinckley*, 58 Cal. 457; *People* v. *Coggswell*, 113 Cal. 129; *In re Upham's Estate*, 127 Cal. 90; 59 Pac. 315; *Fay* v. *Howe*, 136 Cal. 599; 69 Pac. 423; *Collier* v. *Lindley*, 266 Pac. 526. In the *Fay* case the court said:

In the case of a private trust there must be certainty as to the beneficiaries, but in charitable trusts individuals are not named, for the reason that, if named, the gift becomes a donation to individuals, and, losing the character of indefiniteness as to persons (which is of the essence of a charitable trust) it is no longer a charitable trust. Inherent in every charitable trust is the very characteristic against which appellants' argument points, namely, indefiniteness of beneficiaries.

The leading case of *Estate of Hinckley, supra*, involved a trust created by the will of Hinckley. That will contained a devise of what was termed the California Theatre property to certain trustees upon trust to pay certain bequests and then provided:

After the payment of these bequests as herein provided, the remaining part of the California Theatre property, either under the lease, or in capital amount paid by the lessees, as the case may be, shall be devoted to the establishment of a perpetual fund, to be called "The William and Alice Hinckley Fund," the income of this fund to be devoted perpetually to Human Beneficence and Charity. And while I do not wish to set arbitrary limits to the wisdom, faithfulness, and discretion of my trustees, desiring, as I do, to foster Religion, Learning and Charity, I wish to call their attention to the trials and afflictions of the industrious, striving, unfortunate, poor, and especially to the aged, the infirm and the lonely. I wish also to show my interest in good learning, and my sympathy with honorable and striving young men, to set apart from the income of this fund the sum of Three Hundred Dollars per annum, to be known and designated as "The Hinckley Scholarship", to be given to some worthy, talented, industrious, and needy young man, who is pursuing liberal studies, either in the University of the State, or in any other school, as the trustees shall name.

The above trust was sustained. In reaching the conclusion that the Hinckley trust was valid, the Supreme Court of California is in line with the courts of last resort of many of the states. In the following cases the courts have found valid testamentary charitable trusts where the trustees were vested with discretion to choose the character or class of charities to be benefited: *Minot* v. *Baker*, 147 Mass. 348; 17 N.E. 839; *Quinn* v. *Shields*, 62 Ia. 129; 17 N.W. 437; *Miller* v. *Teachout*, 24 Ohio St. 525; *In re Creighton's Estate*, 60 Neb. 796; 84 N.W. 273; *Haynes* v. *Carr*, 70 N.H. 463; 49 Atl. 638; *Fox* v. *Gibbs*, 86 Me. 87; 29 Atl. 940; *Pritchett* v. *Edwards*, 26 Wash. 32; 66 Pac. 148; *Selleck* v. *Thompson*, 28 R.I. 350; 67 Atl. 425; *In re Dulles Estate*, 218 Pa. 162; 67 Atl. 49. See Perry on

Trusts, 6 ed., sec. 720. Cf. *St. Louis Union Trust Co.* v. *Burnet*, 59 Fed. (2d) 922. We find no merit in this contention.

We do not think the fact that the trust might be revoked in the manner pointed out affects its validity. It remained unrevoked during the whole of the year 1927, and was during that period a valid and subsisting trust for all its charitable purposes. *Reinecke* v. *Northern Trust Co., supra.* Cf. *Security First Nat. Bank of Los Angeles et al., Executors,* 28 B.T.A. 289, and *Langley* v. *Commissioner, supra.*

The last issue is whether petitioner should be permitted to deduct his contributions to the Foundation under the provisions of and subject to the limitations in section 214 (a) (10) of the Revenue Act of 1926, the material part of which provides:

Contributions or gifts made within the taxable year to or for the use of: * * *

(B) any corporation, or trust, * * * organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *

This deduction should be denied, since the wife of the petitioner has an interest in such earnings, contingent though it be, and for the further reason that the income, which may be accumulated, may by the joint action of the petitioner and his wife or by the action of Mudd alone, revert to the petitioner. This right to accumulate has been exercised in the year before us. In that year donations made by the Foundation were less than one fourth of the income of the trust (excluding profits on sales or exchanges of the corpus) and were also less than one half of the donations made to it by the petitioner. Here we are not concerned with the fact that the petitioner alone does not possess the right to revoke the trust, but are concerned with the question whether the trust itself was " organized and operated exclusively " for charitable purposes, " no part " of the net earnings of which may inure to the benefit of the petitioner. We can not hold that it was so organized or is so operated where under the provisions of the trust instrument at least a part of the income may be appropriated to the private use of the very individual who made the so-called donations. Cf. *First Nat. Bank of Boston, Administrator,* 25 B.T.A. 252, and *Security First Nat. Bank of Los Angeles et al., Executors, supra.*

Having determined that the petitioner is not taxable on the income of the Foundation, it becomes unnecessary for us to pass on issue (2).

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Van Fossan, Matthews, and Adams dissent.