[S. F. No. 6436.   Department Two.—April 17, 1914.]

In the Matter of the Estate of JOHN W. WARNER, Deceased.

Husband and Wife—Community Property—Overcoming Presumption.
The presumption which attends the possession of property in California by either spouse that it is community property may only be overcome by clear and certain proof that it is really separate property. In the present case, the evidence is sufficient to overcome this presumption.

Id.—Real Property Purchased in California With Separate Property Acquired in Another State.—Real property situated in the state of California, which was purchased during coverture by a married man who was a resident of the state of Illinois, with money acquired by him while domiciled in the latter state, becomes his separate property, there being no law of community property in Illinois resembling the California statutes on that subject.

ID.—INVESTMENT OF SEPARATE PROPERTY DOES NOT CHANGE STATUS.—
The *status* attached to separate personal property, enjoyed under the
law of the domicile by one of the spouses at the time it was ac-
quired, is not lost by its investment in real property in another
jurisdiction where a different law is in force.

APPEAL from a judgment of the Superior Court of
Fresno County settling the final account of the executor of
the will of a deceased person.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellant.

Snow & Freeman, and Frank H. Short, for Respondent.

MELVIN, J.—It is agreed by counsel on both sides that
but one point need be considered on this appeal, i. e., whether
the realty of the deceased in this state was his separate
property or was community property.

The matter comes here on appeal from a judgment sustain-
ing contestant's objection to the executor's proposed final
account and settling that account in accordance with the
theory that the land was community property.

John W. Warner and the contestant were married in 1874
and resided in Clinton, Illinois, until his death.   During
their married life John W. Warner sent from Illinois cer-
tain funds which were used to purchase real property in the
state of California.   This is the land out of which the con-
troversy arose.   Warner died testate; his will was probated
in Illinois; ancillary administration was had in California,
and in due time the executor  Vespasian Warner filed his
final account and petition for distribution.   He prayed that
all of the estate be distributed to him in accordance with
the provisions of the will.   The widow renounced her rights
under the will and instituted this contest.

Appellant contends that it was proven at the trial sub-
stantially and without contradiction, as well as stipulated,
that in Illinois there is no law of community property and
that Mr. Warner possessed the money with which he bought
the land in California as a citizen of Illinois and that there-
fore the real estate partook of the nature of the money with
which it was purchased and was not community property.

The position of respondent, in brief, is this: Possession of property by either spouse in California raises the presumption that it is community property. There is also a presumption that the laws of Illinois are the same as those of California. There was not sufficient evidence, says respondent, to overcome these presumptions by proving either that the law of Illinois does not recognize community interest in property acquired during the existence of the marriage relation, or by establishing the fact that the money sent to California by Mr. Warner for the purchase of land was his separate property earned in Illinois.

It is undoubtedly true that the presumption which attends the possession of property by either spouse may only be overcome by clear and certain proof that it is really separate property. (*Meyer* v. *Kizner,* 12 Cal. 251; [73 Am. Dec. 538]; *Morgan* v. *Lones,* 78 Cal. 59 [20 Pac. 248]; *Dimmick* v. *Dimmick,* 95 Cal. 326, [30 Pac. 547]; *Jordan* v. *Fay,* 98 Cal. 267; [33 Pac. 95]; *Davis* v. *Green,* 122 Cal. 366; [55 Pac. 9]; *Rowe* v. *Hibernia Sav. & Loan Society,* 134 Cal. 405, [66 Pac. 569].) This rule is admitted by appellant, but he insists that he sustained the burden cast upon him. The source of the money for the purchase of the Warner property was proven by the testimony of Mr. O. J. Woodward, the president of the First National Bank of Fresno. The witness stated that Mr. Warner had been engaged in the banking business in Clinton Illinois, from 1864 to the time of his death. He lived there and transacted his business there. He was a man of large wealth at the time of his death. He spent the greater part of his life in Clinton there acquiring the property by which his fortune was built up. He never resided in California. The money with which he purchased the land here in controversy was sent by Mr. Warner from the bank at Clinton, Illinois. This testimony amounted to a strong showing that the money was possessed by him at the place of his domicile, and presumptively was subject to the law of Illinois. There was not a syllable of testimony contradictory of Mr. Woodward's statement. It is true that upon cross-examination he said he knew of Mr. Warner having some property in Iowa and that it was impossible for him to state whether the money sent to California for the purchase of land was derived from transactions

in Illinois or in Iowa or elsewhere. The witness also said that he could not tell whether the money was Mrs. Warner's or not, as it had no "ear marks on it." Of course it had no "ear marks" on it, but it did have the presumption attaching to it that the man who held it in Illinois and sent it to California for the specific purpose to which it was applied, owned it under the law of his domicile. While strong proof of the nature of separate property is necessary, the law does not require demonstration nor that all possible contingencies have been negatived by the showing that the property was not owned by the marital community. In other words, the learned judge of the trial court was not justified in holding that the property was not subject to the laws of Illinois when Mr. Warner assumed to spend it as his own. At the trial one of Mrs. Warner's counsel said: "I will stipulate that the money that was paid for these two pieces of property now belonging to the estate of John Warner in California was sent out here to pay the purchase price of them at, or near, the date that the deeds were made."

There was direct, uncontradicted, positive testimony that Illinois has no law of community property resembling our Californian statutes on that subject, but that the common law prevails in that state. Judge George B. Graham, a lawyer who had practiced for many years in the state of Illinois, was the only witness who testified upon this subject. He said that he was acquainted with the laws of the state of Illinois with respect to the ownership and distribution of property, and that in Illinois there is no community interest in property growing out of the marriage relation. There was, he said, a law of descent of property but it did not change the common-law rule in that regard. In his examination the following question was asked by counsel and the appended answer was given by Judge Graham:

"Q. Now, with reference to the ownership of real and personal property in the state of Illinois, at all times down to the present time you have testified to, what is the law of that state as to whom the property belongs that is owned during marriage? A. The property acquired by husband or wife during marriage becomes the property of the husband absolutely."

He also stated positively that in Illinois property acquired by husband and wife during coverture is subject to the common-law rule and always has been. The general rule of common law is well stated in 15 Am. & Eng. Ency. of Law, p. 834, as follows: "It may be stated as a general rule that at common law the husband, as against every person except his creditor, has a right to dispose of his personalty in any manner he thinks proper during his lifetime, and during coverture the wife has no interest in the property except so far as the husband may be liable for her support and maintenance." Counsel for Mrs. Warner do not attack the verity of Judge Graham's statements, but say that the court was justified in disregarding his testimony on the ground that he had not been in active practice in Illinois for many years and consequently his exposition of the law of that state did not and should not move the court against the presumption which prevails in the absence of a contrary showing that the law of a foreign jurisdiction is the same as that of California. We cannot agree with this view. The witness was a qualified expert who was allowed to testify as such. While the court is clothed with wide discretion in accepting or discarding testimony, this discretion is not so absolute that we may never question its exercise. There was no effort to impeach the witness nor to show that the common-law rule was not in effect in the state where the Warners lived for so many years. Indeed the attitude of one of counsel for the widow showed that he did not seriously question the position of the proponent of the will that there is not community interest in property acquired in Illinois by residents of that state during coverture. In the early part of the hearing when it was sought to prove the law of Illinois on behalf of the executor the following colloquy occurred:

"Mr. Cory: In other words, the law with relation to real property in Illinois is that the wife has the common-law right of dower; the law of separate and community property does not exist there as in this state.

"Mr. Snow: Only I object on the ground that it is irrelevant, incompetent and immaterial, we do not object to the law itself. We have stipulated what the law is, but we object to the introduction.

"Mr. Cory: You do not mean by 'incompetent' that that is not the law, but that it does not apply.

"Mr. Snow: Oh, no, that it does not apply to this case."

While this may not amount to a *stipulation* regarding the law of Illinois, it shows that counsel for Mrs. Warner did not seriously question the interpretation of the law given by opposing counsel. There was therefore direct uncontradicted testimony from an expert upon this subject which the trial court was not justified in discarding. It follows that the finding upon the *status* of the property in California was erroneous, for it is well settled that separate personal property, enjoyed under the law of the domicile by one of the spouses at the time it was acquired is not lost by its investment in real property in another jurisdiction where a different law is in force. *Estate of Niccolls,* 164 Cal. 369, [129 Pac. 278], was a proceeding very similar to this. The husband and wife had resided for many years in the state of Illinois where the husband had acquired substantial means, first by the practice of the profession of medicine, and later by the investment of moneys and by dealing in property acquired with funds furnished partly by him and partly by his wife. They brought the proceeds of the business to California and invested in real property from which, after Dr. Niccolls' death, the court set aside a homestead for the widow on the theory that the land had belonged to the marital community. The finding that the land was community property was held not justified. We quote the following language from the opinion written by Mr. Justice Sloss:

"The question, then, is what, according to the law of the state of Illinois, was the character of the property owned and acquired by Dr. and Mrs. Niccolls in that state, and by them brought to California. 'If a husband and wife acquire personal property in one state and then remove with the same into a state in which the community law prevails, the law of the state where they lived when the property was acquired will govern as to whether it be separate or community property.' (Ballinger on Community Property, sec. 47; *Kraemer* v. *Kraemer,* 52 Cal. 302; *Estate of Burrows,* 136 Cal. 113, [68 Pac. 488].) The record before us contains testimony, which is uncontradicted, that 'there is not in the state of Illinois, by statute or as common-law, any such thing as com-

munity property, whereby the husband and wife both have a community interest in property accumulated during the marriage relation.' It follows that the property accumulated during the marriage, whatever might have been its character if the parties had acquired it while domiciled in California, was not community property in Illinois. Consequently neither it, nor any property for which it was exchanged, became community property in this state.''

Upon the authority of the above case and the cases cited in the opinion therein, the judgment in this case is reversed.

Henshaw, J., and Lorigan, J., concurred.