[L. A. No. 19848.   In Bank.   Dec. 18, 1947.]

In re MARGUERITE W. MILLER et al., for Order Establishing Death of RALPH H. MILLER.   THOMAS H. KUCHEL, as State Controller, etc., Appellant, v. MARGUERITE W. MILLER, Respondent.

James W. Hickey, Inheritance Tax Attorney, Donald R. Peck, Deputy Inheritance Tax Attorney, Morton L. Barker and Joseph D. Lear, Assistant Deputy Inheritance Tax Attorneys, for Appellant.

Hahn & Hahn and A. Hale Dinsmoor for Respondent.

SPENCE, J.—This is an appeal by the Controller of the State of California from an order fixing the inheritance tax due herein. Appellant challenges the propriety of the probate court's allowance of a "community exemption" in favor of respondent with respect to certain real property. His position is well taken under the provisions of the Inheritance Tax Act of 1935 (Stats. 1935, ch. 358, p. 1266), in effect at the time of the death of the deceased, as the pertinent language in dispute will be hereinafter discussed and construed.

There is no controversy as to the facts. Prior to 1921, the decedent, Ralph H. Miller, and his wife, Marguerite W. Miller, were domiciled in the state of Iowa. While so domiciled in Iowa, decedent accumulated certain property as a result of his earnings from the operation of a drug business there. These earnings were received during marriage and the property accumulated therefrom would have been the community property of the parties had they been domiciled in the state of California. Iowa, however, is a common-law state and under its laws said property became the separate property of the decedent.

In 1921, upon his retirement, Mr. and Mrs. Miller came to California and established their residence in this state, where they continued to reside until Mr. Miller's death on April 10, 1945. At the time of his death the parties held in joint tenancy property having a total value of $63,653.96, of which $36,600 was the value of real property located in California and the balance constituted intangible personal

property. All of this property, both real and personal, represented the rents, issues, profits and reinvestments of the property acquired from Mr. Miller's earnings from the drug business while he was a resident of Iowa.

Upon Mr. Miller's death this proceeding to establish the fact of death was instituted and an inheritance tax appraiser was appointed to make his report herein. The state Inheritance Tax Act then in effect provided that ''for the purposes of this act, intangible personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either husband or wife if acquired while domiciled in this state, shall be deemed to be community property.'' (Inheritance Tax Act of 1935, § 1, subd. (2); stats. 1935, ch. 358, p. 1267 [3 Deering's Gen. Laws, Act 8495].) The inheritance tax appraiser reported the tax due in this estate to be $746.06, based upon his listing of the real estate as separate property of the decedent and his confining of the community exemption to the intangible personal property. Mrs. Miller filed objections to such tax computation, disputing the premise of distinction and claiming that all the property, both real and personal, should be treated as community property. The court sustained her objections and reduced the inheritance tax to $207.41.

The question of the propriety of the inheritance tax reduction herein turns upon the interpretation of the above-quoted provision of the Inheritance Tax Act. The precise issue is whether the words ''intangible personal property'' refer, as appellant maintains, to the *nature of the property at the date of death,* in which event the provision would have no bearing upon the decedent's real estate; or refer, as respondent maintains, to the *nature of the property as it existed when first acquired at the former domicile,* in which event the provision would be operative as to both real and personal property depending upon the *source* of the funds used to purchase the property owned at the date of death. Thus the focal point of the parties' disagreement is the time when, for the purpose of the inheritance tax, property acquired by a husband and wife in a foreign jurisdiction is subject to reclassification according to the community law of this state. Accordingly, as the facts are here presented in relation to the inheritance tax provision in question, appellant

argues that it is immaterial that decedent's real estate was purchased with earnings which would have been community property under the laws of this state, for its status at the time of death excludes it from consideration as "intangible personal property" and leaves it unchanged as decedent's separate property. On the other hand, respondent contends that, insofar as the time of statutory reference here arises, decedent's earnings became community property as soon as she and decedent established their residence in this state, and decedent's real estate as derived from such reclassified "intangible personal property" retained the character of its source despite a change in form existing as of the date of death. A consideration of related legislation will aid at the outset in determining the problem of statutory construction presented.

In 1935, the same Legislature which enacted the Inheritance Tax Act of 1935 added to the Probate Code, under the designation of section 201.5, a succession statute setting forth the right of a surviving spouse to property acquired under laws of jurisdictions not recognizing community property. The section provides as follows: "Upon the death of either husband or wife one-half of all personal property, wherever situated, heretofore or hereafter acquired after marriage by either husband or wife, or both, while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, shall belong to the surviving spouse; the other one-half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, . . ." (Stats. 1935, ch. 831, p. 2248.) With the exception that the Probate Code section refers to "personal property" and the contemporaneously enacted inheritance tax provision above quoted refers to "intangible personal property" in their respective applications of the community property concept, the two statutes are practically identical in wording and present similar considerations as to legislative intent. In *Estate of Schnell*, 67 Cal.App.2d 268 [154 P.2d 437], section 201.5 of the Probate Code was involved but that case concerned only the surviving spouse's right of succession with respect to the proceeds realized from the sale of real estate in a noncommunity property jurisdiction. Consequently it was not necessary for the court there to consider such arguments of statutory construction as the parties here ad-

vance where part of the decedent's property at the date of death consists of real estate.

Section 201.5 of the Probate Code represents the latest effort of the Legislature to make the marital property rights of spouses who have accumulated property while living in a common-law state, and then moved their residence here, comparable to those of the husband and wife who accumulate their property while domiciled in California. The legislative history of the section has been long and interesting. It is reflected in the successive changes in the definition of community property under section 164 of the Civil Code. Prior to 1917, it had uniformly been held that where the husband acquired property during coverture in a common-law state while domiciled there and then subsequently brought it to California at the time of establishing residence here, such marital property remained the sole and separate property of the husband, irrespective of the prevailing concept of community property in this state as including all property acquired by either spouse after marriage other than that acquired by gift, bequest, devise or descent. (*Kraemer* v. *Kraemer,* 52 Cal. 302, 306; *Estate of Burrows,* 136 Cal. 113, 115 [68 P. 488]; *Estate of Niccolls,* 164 Cal. 368, 372 [129 P. 278]; *Estate of Warner,* 167 Cal. 686, 691 [140 P. 583]; *Estate of Boselly,* 178 Cal. 715, 720 [175 P. 4]; *Estate of Arms,* 186 Cal. 554, 562 [199 P. 1053].) In 1917, the Legislature redefined community property to include "real property situated in this state, and personal property wherever situated, acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State." (Civil Code, § 164, as amended; Stats. 1917, ch. 581, p. 827.) This court held that the expanded definition was not to be construed retroactively, and so did not apply to property of married persons who had become domiciled in this state and brought their property here prior to the date of the amendment. (*Estate of Frees,* 187 Cal. 150, 156-157 [201 P. 112].) In 1923, at the session of the Legislature next following the rendition of this decision, the statute was further amended by inserting the following italicized language so as to include "personal property wherever situated, *heretofore or hereafter* acquired while domiciled elsewhere . . . ," thus making it clear that retroactive application was intended. (Civ. Code, § 164, as amended; Stats. 1923, ch. 360, p. 746.) But power to

legislate as to the character of property brought to this state prior to 1917 was again held wanting, since it would abridge vested rights of the husband. (*Estate of Drishaus,* 199 Cal. 369, 373 [249 P. 515].) Thereafter this court was required to determine the constitutionality of the statute where the change of domicile to California occurred after the 1917 amendment. It was held that to attempt thus to convert separate property into community property, even prospectively, was an unconstitutional impairment of vested property rights acquired in another jurisdiction. (*Estate of Thornton,* 1 Cal.2d 1, 5 [33 P.2d 1, 92 A.L.R. 1343].) So ended the Legislature's attempt to make the acquisition of a California domicile by the husband and wife effect a reclassification, according to California categories, of property acquired by the parties while domiciled in another jurisdiction.

In 1935, at the next session of the Legislature following the decision in the Thornton case, Probate Code section 201.5 was enacted. Unlike the earlier legislation which had been declared unconstitutional, this statute does not purport to rearrange property rights between living husbands and wives in marital property brought into this state upon their change of domicile to California. On the contrary, it is a succession statute apparently enacted in pursuance of the theory of the dissenting opinion in the Thornton case, that such legislation affecting the descent of property would not contravene constitutional guarantees since "the rights of testamentary disposition and succession are wholly subject to statutory control." (*Estate of Thornton, supra,* 1 Cal.2d 1, 7.) Three possible interpretations of the statute might be claimed to be suggested by its wording: (1) that it applies only when the personal property which existed at death is in the *same form* as when acquired while domiciled outside the state and any transmutation into another form of personal property places that property outside the section; (2) that it applies to personal property in that *form at death* which is derived from any property acquired while domiciled elsewhere which would not have been separate property if acquired while domiciled in California; (3) that it applies to *all personal and real property* which had its *origin* in personal property acquired while domiciled elsewhere which would not have been separate property if acquired while domiciled in California.

As a succession statute, it is reasonable to conclude that section 201.5 of the Probate Code was intended to speak as of the time of death and its language expressly so indicates. Thus, it is provided that *"upon the death* of either husband or wife one-half of all *personal property . . .* shall belong to the *surviving spouse."* With that time period fixed as the date of operation in favor of the "surviving spouse," it is significant that the statute refers solely to "personal property" as the subject words to which the modifying language relating to acquisition at a former domicile points. A literal regard for the language of the statute would favor the number (1) interpretation above listed, but if so read the section would have practically no application and would be meaningless except in the relatively rare situation where personal property acquired in another domicile through the joint efforts of the spouses is brought into California and is retained in that *identical form* to become eventually a part of a decedent's estate. Such restriction of the operation of the section would not coincide with the presumed purpose of the enactment, in view of its legislative history, to effectuate a substantial change in the succession of marital property of the type involved. Moreover, such narrow interpretation would be in conflict with the fundamental concept of property law that the character of property is determined by its status at the time of its acquisition. (*Bias* v. *Reed,* 169 Cal. 33, 43 [145 P. 516]; *Palen* v. *Palen,* 28 Cal. App.2d 602, 604 [83 P.2d 36].) Subsequent changes in the form of the property do not alter its nature as separate or community. (*Roberts* v. *Wehmeyer,* 191 Cal. 601, 605 [218 P. 22].)

On the other hand, the number (2) interpretation above listed not only would conform as well with the express wording of the statute but would have the added advantage of giving a wider application to the section consistent with the recognized principles of property classifications prevailing under the law of this state. The statute relates to the disposition "upon . . . death of . . . one-half of all personal property wherever situated. . . .," language evidencing that the reference is made to personal property at the time of death rather than at the time of acquisition. Such wording would reasonably include personal property that in California has been transmuted into another form of personalty at the date of death. (*Estate of Schnell, supra,* 67 Cal.

App.2d 268, 273-274.) ▮ However, if the adjective "personal" were construed as referring to the *source* of the property, then the section would refer to *all* property regardless of whether it has been transmuted into real or personal property if its source was "personal property" of the type described in the section. Such would be the number (3) interpretation above listed to bring within the terms of the section "real property" despite the failure of the Legislature to so provide. It is true that section 164 of the Civil Code, in attempting to fix the rights of living husbands and wives in marital property acquired elsewhere and brought into California, included "real property situated in this state, and personal property wherever situated," while the comparable phrase in section 201.5 of the Probate Code is confined to "personal property wherever situated." Why the Legislature in the latter enactment omitted the express reference to real property does not appear. But the meaning of a statute is to be sought in the language used by the Legislature. (*In re Application of the Monrovia Evening Post*, 199 Cal. 263, 269 [248 P. 1017]; *Anderson* v. *I. M. Jameson Corp.*, 7 Cal.2d 60, 67-68 [59 P.2d 962]; *Armstrong* v. *Smith*, 49 Cal.App.2d 528, 536 [122 P.2d 115].) Since only *personal property* is specified in section 201.5 of the Probate Code, an interpretation nevertheless including therein real property would require reading into the statute words that are not there so as to bring within its terms substantially all marital property of the type here involved. Such expanded interpretation would give the "surviving spouse" succeeding under that statute practically the same rights as would have existed had the property been acquired while the spouses were domiciled in California. (The exception would be in such rare case where realty acquired by the spouses elsewhere might be exchanged directly for realty in California without the property ever being in the form of personalty; as where the husband, having received an interest in a farm or a deed to an urban lot instead of wages in cash as compensation for services rendered, exchanged it for California realty. In most cases the property of the spouses acquired elsewhere represents earnings paid in cash or other form of personalty, and from such source—personal property—the investment in real or personal property proceeds following the change of domicile to California.) It is immaterial here that in view of the prevailing concept of com-

munity property law in this state, such a result might be deemed desirable as a premise for equalizing the rights of succession of a "surviving spouse" in *all* marital property regardless of whether it be in the form of real or personal property at the date of death. Words may not be inserted in a statute under the guise of interpretation. (Code Civ. Proc., § 1858; *Seaboard Acceptance Corp.* v. *Shay,* 214 Cal. 361, 365-366 [5 P.2d 882].) Rather "it is the function of the courts to construe and apply the law as it is enacted and not to add thereto nor detract therefrom." (*Pacific Coast Joint Stock Land Bank of San Francisco* v. *Roberts,* 16 Cal. 2d 800, 805 [108 P.2d 439].) ▇ In conformity with these statutory rules of construction, it necessarily follows that the middle ground of the number (2) interpretation above listed permits as broad an application of section 201.5 of the Probate Code as its express language would support and limits its application to "personal property" existing in that form at death.

▇ With these matters in mind as to the scope of section 201.5 of the Probate Code, the next point to consider is the significance of the related provision of the Inheritance Tax Act of 1935—section 1, subdivision (2)—here at issue. In this connection certain general observations favoring a like construction of the comparable statutory language appear pertinent. As with a succession statute, death is the "generating source" for the operation of the inheritance tax, consistent with the commonly accepted theory that such tax is imposed on the right to receive a decedent's property. (28 Am.Jur. §§ 9 and 10, p. 12.) While such tax is assessed upon the value of property so transmitted, the rates and exemptions are based upon the relationship of the recipient to the decedent. (28 Am.Jur. § 4, p. 9.) Accordingly, a cardinal purpose of the inheritance tax law would be to coordinate its assessment as closely as possible with the substantive probate law regulating the distribution of the decedent's estate. As so considered, the analyses of section 201.5 of the Probate Code and of section 1, subdivision (2), of the Inheritance Tax Act of 1935—contemporaneously enacted legislation—should proceed upon a parallel basis, so that the above-noted factors affecting the limitation of the words "personal property" in the former statute would apply with equal force to the words "intangible personal property" in the latter statute, demonstrating that in both instances the

precise references are to the status of the specified class of property at the time of death. Upon this basis neither statute would apply to a decedent's real property by reason of its source or origin in "personal property," on the one hand, or in "intangible personal property," on the other.

But there are other cogent considerations which fortify this view as to the intent of the scope of the words "intangible personal property" in the provision of the Inheritance Tax Act in question. In 1925, the expanded community property concept of section 164 of the Civil Code was first added to the inheritance tax law. Accordingly, it was provided that "for the purposes of this act, personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either husband or wife if acquired while domiciled in this state shall be deemed to be community property." (Stats. 1925, ch. 284, § 1, subd. (2), p. 473.) Unlike the community property definition then existing in section 164 of the Civil Code in its amended 1923 form as above noted, the related provision of the inheritance tax law did not include the phrase "real property situated in this state" but only incorporated the extended reference to "personal property." The significance of this omission in the inheritance tax provision of 1925 appears from the amendment of the law in 1935 whereby the only change in language was the substitution of the words "intangible personal property" for the words "personal property." At the time of the 1925 enactment, referable to the treatment of "personal property wherever situated" as "community property," it was considered permissible for a state, under the doctrine of *mobilia sequuntur personam,* to levy an inheritance tax with respect to both tangible and intangible personal property of a resident decedent whether at the date of death such property was located within or without the taxing jurisdiction. (28 Am.Jur. § 90, p. 57; *Estate of Hodges,* 170 Cal. 492, 495-496 [150 P. 344, L.R.A. 1916A 837], and numerous cases there cited.) Then in 1926 came the decision in *Frick* v. *Pennsylvania,* 268 U.S. 473 [45 S.Ct. 603, 69 L.Ed. 1058], holding at page 496 that a state "statute, in so far as it attempts to tax the transfer of tangible personalty having an actual situs in other States, contravenes the due process of law clause of the Fourteenth Amendment and is invalid." Although it was not until 1935—following this court's discussion in the

above-cited case of *Estate of Thornton* (1934), 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343], relative to the unconstitutional aspects of the reclassification of marital property rights attempted by section 164 of the Civil Code and prompting the Legislature's reconsideration of that phase of the community property law incident to its 1935 enactment of section 201.5 of the Probate Code—that the inheritance tax act was modified, the express nature of the amendment shows the "direct bearing" of the Frick decision thereon. (*Anderson* v. *I. M. Jameson Corp.*, *supra*, 7 Cal.2d 60, 67.) Accordingly, by section 1, subdivision (2), of the Inheritance Tax Act of 1935, only *"intangible* personal property wherever situated" was specified to come within its terms rather than "personal property," which would be liable for the tax only if its situs was within the taxing jurisdiction. If the reference in the Inheritance Tax Act of 1935 did not mean "intangible personal property" existing in that form at death as distinguished from its form at date of acquisition in the former domicile, there would have been no need to have changed the specification from "personal property," as all property having its source in "intangible personal property" would have come within the terms of the provision as it read in 1925. But the 1935 amendment of the Inheritance Tax Act unmistakably shows the intent of the Legislature that such statute should apply only to "intangible personal property" in that status at death, as the companion provision in Probate Code, section 201.5 applies only to "personal property" in that status at death. Thus language in the two inextricably related statutes is given the same meaning to effect the legislative intent on a common subject matter. (23 Cal.Jur. § 128, p. 754; *Jameson Petroleum Co.* v. *State of California*, 11 Cal.App.2d 677, 680 [54 P.2d 776].)

In passing, it might be said that the question of the import of prior administrative construction of section 1, subdivision (2), of the Inheritance Tax Act of 1935 does not arise here. Examination of the pertinent regulation cited by respondent shows it to be only a restatement of the statute in its reference to "intangible personal property," without attempt to clarify the meaning of the language therein used. As such, it has no significance in relation to the problem of statutory interpretation presented by this case.

Consistent with the foregoing discussion, it was proper for appellant to treat the real property in question as sepa-

rate property and to compute the inheritance tax upon that basis; and the probate court erred in sustaining respondent's claim of "community exemption" in regard to such property.

The order is reversed, with directions to the probate court to fix the inheritance tax payable by respondent in accordance with the views expressed herein.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.