[Civ. No. 22563. Second Dist., Div. One. Apr. 18, 1958.]

JACOB (JAY) PALEY, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Appellant.

Fox, Goldman & Kagon, Stanley E. Fox, Brady, Nossaman & Walker, Walter L. Nossaman, Joseph L. Wyatt, Jr., and Paul Thomas Guinn for Appellant.

Wright, Wright, Green & Wright, S. Earl Wright, Loeb & Loeb and Herman F. Selvin for Respondent.

LILLIE, J.—This is an appeal on the judgment roll in an action for declaratory relief brought by Jacob (Jay) Paley against the Bank of America National Trust and Savings Association, executor of the will of his wife, Lillian, who died in Los Angeles on January 2, 1954. The action was brought to determine rights to her estate.

■ Plaintiff and Lillian were married in Illinois in 1906. They lived there until 1920 at which time they moved to Pennsylvania. Plaintiff became an American citizen in 1925. On January 1, 1936, the Paleys came to California where they took up residence in Los Angeles and remained until her death. While living in the common law states of Illinois and Pennsylvania, plaintiff acquired substantial personal property. We are of the view that all of that property, under the law of the states of his then domicile, was his separate property and that Lillian had neither a present nor expectant interest therein. When the Paleys moved to California in 1936, plaintiff brought the property with him. Had that property been acquired by Paley while he was domiciled in California, it would have been community property, but having been his separate property in the state in which it was acquired, its character did not change when it was brought to California. It was plaintiff's separate property where it was acquired and it retained its separate character in this state.

Lillian died testate on January 2, 1954, survived by the plaintiff. On her death she owned real and personal property valued in excess of $1,750,000. At the time of Lillian's death, plaintiff was the owner of property having a value of about $8,000,000, none of which was community property, all having been acquired as aforesaid, as his sole and separate property. At the trial, defendant contended that under section 201.5 of the Probate Code, Lillian had a right to and did, by will, devise and bequeath to her beneficiaries (who did not include plaintiff) not only her own property but one-half of plaintiff's sole and separate property.

In rendering judgment for plaintiff, the trial court con-

cluded (1) that section 201.5 of the Probate Code does not apply to, or affect the disposition of, or plaintiff's right, title and interest in any of his property; and (2) that if section 201.5 is applicable to the property of the surviving spouse (plaintiff) under the circumstances here involved, the section is unconstitutional.

Appellant seeks reversal of the judgment on the ground that factually the case falls within the provisions of Probate Code, section 201.5, and that this section as applied to respondent herein is a valid enactment and should control. Its contention raises two main points:

(1) Does section 201.5 of the Probate Code give a predeceased spouse testamentary power over the separate and sole property of the surviving spouse?

(2) If it does, as applied to respondent, is the statute constitutional?

Section 201.5 of the Probate Code prior to 1957 read as follows:

"Upon the death of either husband or wife one-half of all property, wherever situated, heretofore or hereafter acquired after marriage by either husband or wife, or both, while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, shall belong to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the debts of the decedent and to administration and disposal under the provisions of Division 3 of this code."

We are satisfied that section 201.5, as applied to the facts in the instant case, will operate to take from a living person his sole and separately owned property, by the testamentary action of the predeceased spouse having no interest of any kind therein.

Respondent urges that such a purported testamentary disposition could not be a reasonable interpretation of the statute; first, because such an effect was not intended by our Legislature and second, because it would be unconstitutional in its operation.

The legislative history of section 201.5 and the obvious purpose for which it was enacted favor the interpretation placed on it by the trial court in its application to the facts in the instant case. Prior to the Supreme Court's decision in *Estate of Thornton* (1934), 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R.

1343], our Legislature made several unsuccessful attempts to change the interests of the spouses in property acquired during marriage outside of the State of California. The Thornton case arose out of the 1917 and 1923 amendments to section 164 of the Civil Code. The husband died in 1929. Had the amendments been operative as against him, they would have had the effect of passing one-half of his property, separate when acquired in Montana, to his surviving spouse who under Montana law had no interest in it other than dower. The Supreme Court held that, as applied, they were unconstitutional for the reason that the limitation of the vested rights of one spouse in his separate property, found in the 1917 and 1923 amendments, was a denial of due process and an abridgement of the privileges and immunities of a citizen. Mr. Justice Langdon in his dissenting opinion agreed with the proposition that "absolutely owned and personal property brought into this state by the husband cannot be taken from him, nor can his ownership or control over it be diminished or impaired by our statute," (1 Cal.2d 5-6) but in discussing the problem of succession to the property of a *deceased* spouse, he expressed the view that upon the death of a decedent, certain property owned by him and brought into this state may be subject to the same rules of testamentary disposition and succession as community property acquired here. It is clear that he had in mind a statute which would operate only to control the succession to the property of a decedent—a statute of succession. It is obvious that he had no thought of a statute which would permit a decedent to dispose of the other spouse's separate property.

In 1935 after the decision in the Thornton case and intending to follow the suggestion of Mr. Justice Langdon our Legislature enacted Probate Code, section 201.5. That it was intended to be strictly a statute of succession as suggested by the dissenting opinion and did not purport to rearrange property rights as between living spouses is borne out in a number of cases. *In re Miller,* 31 Cal.2d 191, at page 196 [187 P.2d 722], the Supreme Court said:

"Unlike the earlier legislation which had been declared unconstitutional, this statute (section 201.5) does not purport to rearrange property rights between living husbands and wives in marital property brought into this state upon their change of domicile to California. On the contrary, it is a succession statute apparently enacted in pursuance of the theory of the dissenting opinion in the Thornton case . . ."

Other courts have expressed a similar view that the section did not attempt to reclassify in the lifetime of the spouses any property coming within its terms (*Paley* v. *Superior Court,* 137 Cal.App.2d 450 [290 P.2d 617]; *Estate of Schnell,* 67 Cal.App.2d 268 [154 P.2d 437]).

From the authorities cited it is clear that from the beginning section 201.5 of the Probate Code was interpreted by our courts strictly as a succession statute governing the devolution, on death, of the property of a decedent and that it was not intended to operate in such a way as to dispose of the property of a living person which, in effect, would rearrange the property rights of the spouses during their lifetimes.

A fair reading of the statute itself bears this out. An analysis of its language makes it obvious that instead of applying to all property of both spouses, as contended by appellant, it applies to each spouse and to the property of that spouse upon his or her death. To shorten its wording, the Legislature used the disjunctive forms in referring first to the death of either husband or wife, and second, to property acquired after marriage by either husband or wife. This to show that the statute was to apply in exactly the same way; to each spouse and to the property of that spouse on his or her death. The first words, "Upon the death," qualify the entire section. Furthermore, the title of the act plainly designates it as a statute of "Succession (Descent of Property)." Additional corroboration is supplied by the use of the word "goes" in specifying what occurs in the event decedent does not exercise the testamentary power provided for. In that event the property "goes" to the surviving spouse. As appellant seeks to apply this to a failure of a decedent to dispose of the property of the surviving spouse, there is nothing to "go" to the latter because the property is already and always has been vested in him as his sole and separate property. This is another indication of the legislative intent to deal only with the property of the deceased spouse and not with the sole and separate property of the surviving one.

We conclude from its history, its language and from prior judicial interpretation, that section 201.5 of the Probate Code is strictly a statute of succession which does not extend, nor purport to give, to one spouse the testamentary power to dispose of the surviving spouse's separate property, in which she has no interest, during the latter's lifetime. Other-

wise construed and applied to the facts in the instant case, its operation would be unconstitutional.

A review of the authorities cited by both parties discloses no case in which the question of the constitutionality of section 201.5 of the Probate Code, as the statute is sought to be applied to the property of the surviving spouse, has been raised, decided or even discussed. The question is an open one.

Appellant's argument that the presumption of legislative validity operates in favor of section 201.5 is of little help when a direct challenge to its constitutionality is made, and it is overcome. ▆▆▆ The presumption of constitutionality may be overcome by a showing that the statute in question operates to deprive one of property without due process of law or that any of the guarantees of our Constitution have been violated. This same point was argued without success in *Estate of Thornton, supra.* ▆▆▆ It is not the presumption that determines the constitutionality or unconstitutionality of a statute but the fact of its operation and effect in a given case.

When plaintiff came to California, he was already the sole and absolute owner of the property in question. His wife had no interest in it whatever, expectant or otherwise. The character of this property did not change when he brought it to this state. If section 201.5 is to be applied in the instant case, then it gave plaintiff's wife as soon as she became a California resident the right to dispose of her husband's separate property by will, thereby stripping him, while he is still living, of one-half of his sole and separate property. Can this application of section 201.5 constitutionally give to the wife such a power? We think not. If the statute has that effect, it clearly takes plaintiff's property without due process of law.

Leading among California cases which have interpreted statutes with a close identity of language and similar method of operation with that of section 201.5 is *Estate of Thornton, supra.* The Supreme Court therein, after discussing at length vested property rights, the language of the 1917 and 1923 amendments to section 194 of the Civil Code and the constitutional provisions involved, held that the amendments sought to limit the vested rights of the one spouse in his separate property and, as applied, were unconstitutional as a denial of due process. The court said, at page 5:

"So long as we are bound by the holding that to limit the

right of one spouse by increasing the right of the other in property acquired by their united labors, is the disturbance of a vested right, we entertain no doubt of the application of at least two provisions of the 14th amendment to the Constitution of the United States. If the right of a husband, a citizen of California, as to his separate property, is a vested one and may not be impaired or taken by California law, then to disturb in the same manner the same property right of a citizen of another state, who chances to transfer his domicile to this state, bringing his property with him, is clearly to abridge the privileges and immunities of the citizen. Again, to take the property of A and transfer it to B because of his citizenship and domicile, is also to take his property without due process of law. This is true regardless of the place of acquisition or the state of his residence.''

The Thornton case involved the husband's separate property on his death. In the instant case we have an attempt to take the husband's separate property away from him during his lifetime. It is also important to note that the language of the statute in the Thornton case was almost identical with that found in section 201.5. In the absence of direct authority, the Thornton case is most persuasive here. However, analogous situations have arisen in other cases in which the courts have held against constitutionality. (*McKay* v. *Lauriston,* 204 Cal. 557 [269 P. 519] ; *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 P. 22] ; *Estate of Bruggemeyer,* 115 Cal.App. 525 [2 P.2d 534] ; *Melvin* v. *Carl,* 118 Cal.App. 249 [4 P.2d 954] ; *Estate of Drishaus,* 199 Cal. 369 [249 P. 515] ; *Scott* v. *Remley,* 119 Cal. App. 384 [6 P.2d 536].) In the case of *Boyd* v. *Oser,* 23 Cal. 2d 613, at page 621 [145 P.2d 312], the Supreme Court used this language: ''. . . To hold that the income of property vested in the husband, whether separate or community in tenure, can be taken from him by the Legislature and given to the wife or her testamentary beneficiaries, would be destructive of the principle which it is necessary to maintain if either husband or wife is to be protected in the fruits of his or her separate property. To attempt a distinction on the ground that the property in this case is community property while in the cited case it was separate property, would be doing homage to names at the sacrifice of the principle. By whatever name the tenancy be called, the fact remains that the property of the Waterlands was vested in the husband. He could not be divested of his rights therein without due process of law.''

This same thinking is reflected in various law review articles discussing section 201.5. The writers are unanimous in their view that when applied to give the wife the power of testamentary disposition of her surviving husband's sole and separate property, section 201.5 is unconstitutional. (Abel, *Estate Planning*, 41 Cal. L. Rev. 230, 234-235; Comment, 19 So. Cal. L. Rev. 39, 43-44; Thurman, *Estate Tax*, 9 Stan. L. Rev. 239, 249.) Suggestive also is the California Law Revision Commission's recommendation submitted to the Legislature in 1957, which resulted in a revision of section 201.5. The commission reported: "Section 201.5 should be revised to eliminate the provision which purports to give the non-acquiring spouse testamentary power over the acquiring spouse's property during the latter's lifetime. As is pointed out in the research consultant's report, the courts of this state have repeatedly held similar legislation to be an unconstitutional infringement of vested property rights, in violation of the due process clauses of the Federal and State Constitutions."

The due process clause, however, is not the only constitutional provision involved here. If applied in the manner urged by appellant, section 201.5 conditions the right to enter and settle in California upon the giving up of one's right to his own sole and separate property, which abridges the privileges and immunities of a citizen of the United States. Under Amendment XIV, section 1, United States Constitution, and a variety of Supreme Court decisions, Mr. Paley had the right, accorded to all citizens of this country, to travel freely between the states and to become a resident of any one of them. If section 201.5 is applied in the manner urged by appellant, immediately upon his becoming a resident of California, plaintiff's separate property in which she has no interest whatever is subjected to the testamentary disposition of his wife. In other words in order to exercise his right guaranteed under the Constitution he must give up a substantial part of the incidents of the ownership of his property. This problem, too, was discussed by the Supreme Court in *Estate of Thornton*, 1 Cal.2d 1, at page 5 [33 P.2d 1, 92 A.L.R. 1343]. Therein the court said: ". . . If the right of a husband, a citizen of California, as to his separate property, is a vested one and may not be impaired or taken by California, then to disturb in the same manner the same property right of a citizen of another state, who chances to transfer his domicile to this state, bringing his property with him, is clearly to abridge the privileges and immunities of the citizen . . ." It seems

plain from this language our Legislature cannot constitutionally exact as the price of residence here that plaintiff give up vested rights in property which he acquired and which he owned before he came here.

■ We conclude that section 201.5 of the Probate Code, as it purports to give one person the power either to take the property of another or to curtail or diminish the owner's right in it during his lifetime, is arbitrary and unconstitutional as violative of the due process clause and that it abridges the privileges and immunities of a citizen. Appellant cites various California cases in support of its contention that the constitutionality of section 201.5 has already been upheld by the courts of this state. They neither raised the question of its constitutionality, nor was the section sought to be applied to take away the property of the surviving spouse. *In re Miller*, 31 Cal.2d 191 [187 P.2d 722], arose out of the Inheritance Tax Act of 1935. This and section 201.5 were passed at the same time and contained similar language. On a question of interpretation of the tax statute, section 201.5 was discussed but it was not directly before the court nor was the question of its constitutionality raised. *Estate of Ball*, 92 Cal.App.2d 93' [206 P.2d 1111], involved sections 228 and 229 of the Probate Code and it arose with respect to the succession to the separate property of the *acquiring predeceased* spouse, not the living one. Although section 201.5 was discussed, no challenge to its constitutionality was made. The court as in the Miller case viewed section 201.5 strictly as a statute of succession.

In other cases cited by appellant (*Estate of Schnell, supra*; *Estate of Perkins*, 21 Cal.2d 561 [134 P.2d 231]; *Logan* v. *Forster*, 114 Cal.App.2d 587 [250 P.2d 730]) no question of the constitutionality of section 201.5 was raised, considered or decided. Nor were any concerned with the right of the predeceased spouse to dispose by will of the sole and separate property of the surviving spouse. They all deal with the question of succession to the property of the deceased spouse; the reclassification of property after death (which of course the Legislature has a right to regulate since the right of inheritance is not an inherent or natural one) and not with reclassification of property in the lifetime of the spouses.

■ Although section 201.5 may be properly applicable to the property of the deceased spouse, it is quite a different matter when applied to a situation in which the separate property of a living person is subject to disposition by the

will of a spouse having no interest in it. If the first application be constitutional there is nothing in the law to require a similar holding when the statute is applied to a materially different set of facts in which it may work an impairment of some right secured by the Constitution. The rule that a statute may be invalid as applied to one set of facts, yet valid as applied to another, is too well-known to require citation of authority. In this case, however, we have more of a question of the operation and effect of a statute and of how it affects the rights and interests of the various parties to whom it is sought to be applied rather than a question of severability. But its constitutionality in the first situation cannot prevent a contrary determination in the other if justified under the law. In other words, if section 201.5 is constitutional as applied to the property of an acquiring decedent, such a holding does not necessarily render it constitutional as applied to the property of the acquiring surviving spouse. ██ Generally, when a statute is unconstitutional in part and the invalid part cannot be severed the entire statute is void. Therefore, if appellant is correct in its contention that section 201.5 is not severable the statute is not saved merely because it may, in part, be constitutional.

██ Nevertheless, section 201.5 appears to be severable. The purpose of the legislative enactment was to provide a rule of succession and it was designed to operate on the property of the decedent. If it be limited to this, as a succession statute, then it would be complete in itself and capable of being executed in accord with the legislative intent and the dominant purpose of the Legislature. That being so, the constitutional part is clearly severable from the unconstitutional. ██ The fact that a statute is unconstitutional in part does not necessarily invalidate it in its entirety. The remaining part of the statute may be preserved if it can be separated from the unconstitutional part without destroying the statutory scheme or purpose. (*People* v. *McCaughan* (Nov. 19, 1957), 49 Cal. 2d 409 [317 P.2d 974]; *People* v. *Lewis*, 13 Cal.2d 280 [89 P.2d 388]; *In re Bell*, 19 Cal.2d 488 [122 P.2d 22]; *Hale* v. *McGettigan*, 114 Cal. 112 [45 P. 1049].)

Appellant's principal argument that section 201.5 is not a deprivation of property without due process of law centers around the proposition that it is a reasonable exercise of the police power of the state. This same argument advanced in *Estate of Thornton, supra,* was not successful. Appellant cites considerable authority to the effect that a modification or even

abolition of marital property rights comes within the regulatory power of the state and that the police power can destroy vested rights. There are as many cases in which the court recognizes the principle that, however exercised, even the police power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably. (*Nashville C. & St. L. R. Co.* v. *Walters*, 294 U.S. 405 [55 S.Ct. 486, 79 L.Ed. 949] ; *McKay Jewelers* v. *Bowron*, 19 Cal.2d 595 [122 P.2d 543, 139 A.L.R. 1188] ; *Dobbins* v. *Los Angeles*, 195 U.S. 223 [25 S.Ct. 18, 49 L.Ed. 169].) Statutes which operate in a manner to give one person power over the property of another have been declared clearly arbitrary and a denial of due process, the police power notwithstanding (*Carter* v. *Carter Coal Co.*, 298 U.S. 238 [56 S.Ct. 855, 80 L.Ed. 1160] ; *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.*, 40 Cal.2d 436 [254 P.2d 29] ; *Washington* ex rel. *Seattle Title Tr. Co.* v. *Roberge*, 278 U.S. 116 [49 S.Ct. 50, 73 L.Ed. 210, 86 A.L.R. 654] ; *Eubank* v. *Richmond*, 226 U.S. 137 [33 S.Ct. 76, 57 L.Ed. 156, 42 L.R.A.N.S. 1123]). These cases involved various statutes which delegated the power to curtail or limit rights of ownership in property held by another. In the instant case section 201.5, if applied in the manner sought by appellant, delegates the power to take another's property away completely.

Appellant relies heavily on *Warburton* v. *White*, 176 U.S. 484 [20 S.Ct. 404, 44 L.Ed. 555] and *Arnett* v. *Reade*, 220 U.S. 311 [31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A.N.S. 1040]. These cases are clearly distinguishable from the one at bar. They do not deal with the right of the Legislature to give to one spouse (wife) an interest in property in which, when it was acquired by the husband, the wife got no vested interest. Even in respect to community property they do not deal with the enlargement of the wife's interest in the property at the expense of an equivalent diminution of the husband's rights. In *Warburton* v. *White*, 176 U.S. 484 [20 S.Ct. 404, 44 L.Ed. 555], at the time the property was acquired by husband and wife, under the law of Washington the wife got a present vested proprietary interest in it. The Supreme Court held that a subsequent change in the law of inheritance with respect to that interest would be constitutional since the succession to that interest was subject to regulation and change by the Legislature at any time before the wife died. This case dealt only with the power of the Legislature to change the law of succession with respect to one's own property or property

interest. The only issue involved centered around the succession to the wife's interest, which she got at the moment the property was acquired. In *Arnett* v. *Reade, supra,* under the law of New Mexico the wife got a present vested ownership interest in community property when it was acquired. The Supreme Court held that a 1901 statute requiring the wife's concurrence to a conveyance of the community property by the husband before it could be valid against her was constitutional; that it further protected her against alienation by the husband in fraud of her interest in the property and it did not take away any of the husband's vested interest in the property. The court, however, made it clear that since her interest was a vested one the law could not constitutionally take it away without compensation.

Prior to 1927, when the wife's interest in community property was a mere expectancy and not a present vested ownership right as it was in the jurisdiction in which the Warburton and Arnett cases arose, the holding in these cases was not persuasive upon our courts in California.

*Wissner* v. *Wissner,* 338 U.S. 655 [70 S.Ct. 398, 94 L.Ed. 424], argued at length by appellant, throws little light upon our constitutional problem. The question there was whether Congress, in providing for life insurance for military personnel, intended to give the insured the right to select a beneficiary in whom the policy proceeds could be vested regardless of the property law of the various states. The Supreme Court held it did and that the insured's wife, who was not named as his beneficiary in the policy, could not claim a community interest in the proceeds. The statute which created the property could attach to it whatever incidents of ownership it saw fit, the property laws of the various states notwithstanding. Congress took away no vested right because no property right ever vested in the one (widow) claiming it.

In the instant case, the entire rights to the property in question were fully vested in respondent alone, solely and exclusively, at the time he acquired the property and still were vested in him alone when section 201.5 was enacted and when he came to California. Lillian at no time ever had any kind of an interest in his property. The authorities cited by appellant seem to have little to do with our question— whether the wife who got no interest in the property when it was acquired can thereafter be given the right to dispose of it.

We hold that section 201.5, as applied to plaintiff,

has the effect of taking his property without due process of law and abridging his privileges and immunities as a citizen of the United States. It is unconstitutional and void as applied to him. Section 201.5 of the Probate Code did not grant Mrs. Paley the testamentary power claimed for her.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 6, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 17, 1958.