In the Matter of the Estate of
ALBERT D. BARKER, Deceased

Probate No. 146-78
Superior Court of Guam
May 14, 1980

- - - - -

ABBATE, Judge

### FINDINGS OF FACT, RULINGS OF LAW
### AND ORDER

This matter comes before the court on the petition of Loan Kim Barker, widow of deceased, for declaration community property rights and for custody of community property. The thrust of Petitioner's argument is that she is domiciled on Guam and that the marital domicile was Guam. During the testimony in support of her petition, Petitioner Loan Kim Barker admitted that she had paid certain people the sum of $6,000 to kill the deceased, and fled Guam shortly after the murder. Petitioner further testified that she has been convicted of second degree

murder in this regard before the District Court of Guam. Petitioner also testified that she and Albert D. Barker were married in Vietnam "in 1971" and moved to Guam "some time in 1973". It must be remembered that this case is a petition for declaration of allegedly vested community property rights, not a petition to take under the estate of the deceased.

Donna B. Lawrence, the personal representative the deceased within the State of Colorado, opposes this petition on several grounds: (1) that the marital domicile was Colorado and that Colorado law therefore governs this case as to personal property; (2) that personal property acquired by the decedent while residing in Guam, but domiciled in Colorado is not community property; and (3) that the marital domicile of the Barker's was Colorado, and by operation of law, a woman, upon marriage, loses her former domicile and acquires that of her husband, no matter where the wife actually lives, what she believes, of what she intends.

FINDINGS OF FACT: From all the evidence in this case, this court finds the following facts:

Petitioner and the deceased were married in Vietnam in 1971 and moved to Guam some time in 1973.

This court takes judicial notice that in the case of <u>Barker</u> v. <u>Barker</u>, Domestic Case No. 752-78, the deceased declared himself to be domiciled in Guam.

Petitioner has never been to Colorado and never intended to make Colorado her home.

The marital domicile, the situs of the marriage, was Guam, from the time of the Barker's arrival upon Guam until the deceased's death.

Petitioner has been convicted before the District Court of Guam of the second degree murder of the deceased.

Petitioner paid $6,000 in community property funds to certain persons to kill the deceased.

Subsequent to the deceased's death, Petitioner expended $10,000 in what had been community property funds. These expenditures included the cost of transportation to flee Guam for the primary purpose of avoiding prosecution, living expenses, gifts, loans given to various people, $5,000 in attorneys' fees to defend Petitioner on the murder charge, and $3,000 which was put up as bail.

Substantially all the expenses of running the family home, except for food, plus substantially all the expenses of the murder, the escape, and the attorneys' fees and bail have come from Petitioner's earnings as a waitress in various bars. At the time Petitioner earned this money she and the deceased were living together, under the same roof.

The deceased caused all his salary from his employment with the Federal Aviation Administration to be deposited in a bank in Hawaii, under his name alone.

53

The court notes from the record in this case that the deceased had an extensive estate, including two mortgages, a substantial amount of cash, and many $100 savings bonds, all in his name alone.

If any of the above findings of fact be deemed rulings of law, they are to be so considered.

RULINGS OF LAW: Two statutes of Guam provide that a wife must live where her husband chooses. See Civil Code §103 and §156. However, §129 of the Code of Civil Procedure provides as follows:

> §129. Residence, proof required. In actions for dissolution of marriage neither the domicile nor residence of the husband shall be deemed to be the domicile or residence of the wife. For the purpose of such an action each may have a separate domicile or residence depending upon proof of the fact and not upon legal presumptions. Physical presence in Guam for one (1) year next preceding the commencement of the action shall give rise to a presumption of residence required by §123 of this Code. [Emphasis added.]

The above section speaks in terms of the possibility of separate domiciles of husband and wife for the purposes of a divorce action. Although this section is by no means a law of general applicability, it does indicate that a person may have different domiciles for different purposed. This is in accord with the modern view. Witkin and Proposed Official Draft of the Second Restatement of Conflict of Laws, §11. It must also be noted that §103 and §156 of the Code of Civil Procedure both speak in terms of "place of living", not domicile. Thus, a showing that the deceased was domiciled, for some purposes, in Colorado, does not preclude this court from finding that the marital domicile, the situs of the marriage, was Guam. This appears to be the only reasonable result in this case. This court takes judicial notice that in the case of Barker v. Barker, Domestic Case No. 752-78, the deceased declared himself to be domiciled in Guam. Under Civil Code §129, the deceased need not have done that as a declaration of Colorado as his domicile wouldn't have effected the Court's jurisdiction in that case. Further, there has been testimony in this case that Petitioner Loan Kim Barker has never been to Colorado, never agreed to move to Colorado, and felt that the climate there would be too cold for her comfort. The court believes this testimony on these points. Based upon all of the above, the court finds that the marital domicile, the situs of the marriage, was Guam.

The court must therefore proceed to determine the status of the property in question. The court has found, based upon Petitioner Loan Kim Barker's testimony that she and the deceased were married in VietnNam in 1971 and moved to Guam 'some time in 1973". Accordingly, Petitioner asserts property in question acquired on and after the date of her marriage. Section 164 of the Civil Code supports this position. This section provides in part as follows:

§164. Community property generally. All other property acquired after marriage by either husband of wife, or both, including real property situated in Guam, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in the Territory of Guam is community property; . . .

Under this statute, all of the property in question which was acquired on or after the date of the Barker's marriage in Vietnam, but before their arrival in Guam, would be transformed into community property, if it were not already community property under the laws of Vietnam, upon their arrival and taking up of marital domicile on Guam. Such a view, however, overlooks the operation of those provisions of the Constitution of the United States made applicable to Guam by the Organic Act of Guam. 48 U.S.C. §§1421 et seq. The Supreme Court of California has declared an identically worded statute unconstitutional as it applied to the devolution of property upon death. Estate of Thornton, 1 Cal. 2d 1, 33 P.2d 1 (1934). See also, Paley v. Bank of America, 159 Cal. App. 2d 500, 324 P.2d 35 (1958). Accordingly, and for the same reasons cited in Thorton, op. cit., §164 of the Civil Code is declared void pursuant to 48 U.S.C. §1421b.(u) to the extent that §164 purports to apply to the devolution upon death of property acquired in a non-community property jurisdiction. See also, Estate of Nicolls, 164 Cal. 368, 129 P. 278 (1912). But see, Addison v. Addison, 62 Cal. 2d 558, 43 Cal. Rptr. 97, 399 P.2d 897 (1965).

Therefore, only that property in question which was acquired after the Barker's arrival on Guam would be community property by virtue of Civil Code §164, but was it already community property by virtue of the laws of Vietnam? The law of Vietnam in this regard has been neither pleaded nor proved. Notwithstanding that there is a presumption that property acquired during a marriage is community property, under §164, it is still Petitioner's burden to establish the relevant time frame during which such a presumption would operate. That is to say, to plead and prove the law of Vietnam and/or also to prove on what date the Barker's arrived on Guam thereby

55

moving the situs of their marriage to Guam. Petitioner has therefore failed in her proof as to the nature of that portion of the property in question that was acquired before the Barker's removal to Guam. Walton v. Arabian American Oil Co., 233 F.2d 541 (2nd Cir. 1956) cert. den. 352 U.S. 872 (1956).

To apply the lex fori or to indulge the presumption that the law of Vietnam is the same as the law of Guam would also be inappropriate in this case. To do either could be correct if the law of Vietnam happened to be community property, but it would not be if the law of Vietnam were other than community property. Petitioner's case is silent on this point and this court will not risk attenuating constitutional rights when such a risk results from the failure of Petitioner, who has the burden of proof, to plead and prove the law of Vietnam.

Similarly, Petitioner has established only that she and her husband came to Guam "sometime in 1973". Petitioner, having the burden of proof, may not take advantage of her own imprecision in her proof of facts. Therefore, the Petitioner's community property interest attached only to that portion of the property in question that was acquired on or after December 31, 1973.

Petitioner admitted in her testimony that her husband's death was brought about by her hiring certain persons to kill him and that she ultimately left Guam shortly after her husband's murder. The court has found that the primary purpose of Petitioner's leaving Guam was to avoid prosecution for her husband's murder. (It must be remembered that this case is dealing with Petitioner's vested community property rights, and not with any inheritance.) It is argued by Petitioner that all such expenditures, including the murder, transportation costs, living expenses, gifts, and attorneys fees, were paid from Petitioner's separate property. There is presumption that all property acquired during marriage is community property. Civil Code §164. The burden is upon Petitioner to show that such property, which was clearly acquired during her marriage, is her separate property. Wilson v. Wilson, 76 Cal.App. 2d 119, 172 P.2d 568 (1946). This is frequently a very difficult burden to meet. Petitioner testified that the deceased never gave her any money to run the house and that all the expenses of running the house, the murder, escape, and attorney's fees came from her earnings as a waitress in various bars. Such testimony, coming from an admitted convicted felon with a strong interest in these proceedings might well be viewed with suspicion but for extensive corroboration of that testimony. Testimony was had from other witnesses that the deceased caused his pay to be deposited in a bank in Hawaii. The deceased also had an extensive estate, all in his own name, including two mortgages, a substantial amount of cash, and many $100 savings bonds. Considering the extraordinary lengths to which the deceased

56

went to keep any of his earnings from going to the support of his family, Petitioner's testimony on this point is most credible indeed. Petitioner has clearly established that, except for trivial amounts, all the expenses of running the house and the expenses of the murder, transportation cost, living expenses, gifts, and attorney's fees were paid from money that Petitioner earned on Guam, during her marriage to the deceased, Any such trifling contributions from the deceased would not transform what would otherwise be separate property into community. Estate of Cudworth, 133 Cal. 462, 65 P. 1041 (1901).

However, Petitioner has not established that such funds were her separate property, only that they came from her earnings. Civil Code §164 provides that such earnings are part of the community property. The fruits of such earnings would only be Petitioner's separate property if, at the time of such money was earned, Petitioner was living separate from the deceased. See, Civil Code §169. There has been no showing that this was the case, Indeed, all the evidence shows that Petitioner was living with her husband during this time.

The court has found that Petitioner fled Guam after the death of her husband. Thus, the expenditures for transportation, living, gifts, and attorney's fees must be held to have come from Petitioner's one-half interest in the community.

As to the expense of hiring killers to murder her husband, this was paid out while Petitioner's husband was alive. Such expenditure, however, was unlawful. It was an illegal contract, a squandering of community funds. No lawful valuable consideration was received, It certainly served no family purpose. Accordingly, Petitioner's half interest in the community property must bear the cost of hiring her husband's murderers.

The court has found that the cost of procuring the deceased's death to be $6,000.00. The court has found the cost of Petitioner's fleeing Guam, plus other expenditures incurred after the deceased's death, to be $10,000.00. This amount includes transportation costs, and living expenses, gifts, and attorney's fees. As the living expenses were incurred, the gifts purchased, and attorney's fees expended after the deceased's death, they all must be charged to Petitioner's half interest in the community property, notwithstanding that these expenditures were not illegal, immoral, or unethical. If any of the above rulings of law be deemed findings of fact, they are to be so considered.

ORDER: Accordingly, the court declares that Petitioner does have a lawful interest in the property in question, to the following extent:

57

A half interest in all such named property that was acquired on or after December 31, 1973, but a total value of $16,100.00 to be deducted from such half interest.

SO ORDERED.